

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 3, 2019

**BY ECF**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _____

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. William Taylor*, **19 Cr. 850 (JSR)**

Dear Judge Rakoff:

The Government respectfully requests that the Court set a conference in this matter in order to address potential conflict of interest arising from Quinn Emanuel's representation defendant William Taylor. As discussed below, the Government believes that a potential, although waivable, conflict of interested exists because the same set of attorneys from Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") represented both Mr. Taylor and co-defendant Parker Petit during the pre-indictment phase of the Government's investigation. The Government accordingly requests that the Court schedule a hearing pursuant to the Second Circuit's guidance in *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982). Counsel for Mr. Taylor have informed the Government that they do not oppose this request.

## BACKGROUND

On November 26, 2019, the above-captioned Indictment (the "Indictment") was unsealed. The Indictment charges Petit and Taylor with conspiracy to commit securities fraud, to make false filings with the SEC, and to improperly influence the conduct of audits; and securities fraud in connection with a scheme in 2015 and 2016 to fraudulently inflate the publicly reported revenue of MiMedx Group, Inc., a public company of which Petit was Chief Executive Officer and Taylor was Chief Operating Officer. In discussions with this Office prior to the return of the Indictment, Petit and Taylor were jointly represented the same set of attorneys from Quinn Emanuel in connection with MiMedx's internal investigation into conduct at issue in this case, this Office's investigation, and the parallel SEC investigation. In the later stages of the investigation, Petit also retained Eric Bruce, Esq. of Freshfields Bruckhaus Deringer, and Michael Volkov, Esq. to work alongside Quinn Emanuel. After the return of the Indictment, the Government was informed that, going forward, Quinn Emanuel would represent Taylor exclusively and Petit would be represented by Messrs. Bruce and Volkov.

## DISCUSSION

### I.    The Curcio Inquiry

The Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation. See United States v. Cain, 671 F.3d 271, 293 (2d Cir, 2012). To ensure that a defendant's right to conflict-free counsel is adequately safeguarded, a district court has an obligation whenever it is "sufficiently apprised of even the possibility of a conflict of interest" to initiate an inquiry to determine the precise nature of the conflict. United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). Because the Sixth Amendment guarantees not only the right to an attorney of undivided loyalty but also, with certain exceptions, to an attorney of one's own choosing, where those rights conflict the determination of which right is to take precedence must generally be left to the defendant, who may make a knowing and intelligent waiver of his right to a conflict-free lawyer if he desires to continue the representation. Cain, 671 F.3d at 293 (citing Curcio, 694 F.2d at 24-25). Nonetheless, because the Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," Wheat v. United States, 486 U.S. 153, 160 (1988), "there exists a narrow class of so-called per se conflicts that are not susceptible to waiver." Cain, 671 F.3d at 293.

In conducting an inquiry regarding a conflict, a court must first "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." Levy, 25 F.3d at 153. As the Second Circuit has explained,

> In satisfying its inquiry obligation, the district court may rely on the representations of counsel as to his interest in the case and how any potential conflict might be cured. If the court is satisfied at the inquiry stage that there is no actual conflict or potential for one to develop, its duty ceases. Where the court determines that an actual or potential conflict exists but that it would not fundamentally impair the lawyer's representation, the district court should address the defendant directly and determine whether he wishes to make a knowing and intentional waiver of his right to conflict-free counsel in conformity with the procedures set out in Curcio. Finally, if the initial inquiry establishes that the conflict is such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation, the district court must immediately disqualify him.

Cain, 671 F.3d at 293-94.

The Second Circuit has emphasized that the class of cases in which an attorney conflict is truly unwaivable is a "very narrow" one, United States v. Perez, 325 F.3d 115, 126 (2d Cir. 2003). Nonetheless, because the rights of the defendant and the need to maintain the appearance of fairness demand that any necessary inquiry into possible conflicts of interest occur "sooner rather than later," Rogers, 209 F.3d at 146, the district court has "substantial latitude in refusing waivers

of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163.

As noted, where the district court concludes that an actual or potential conflict exists but that the conflict is not "such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation," Cain, 672 F.3d at 294, the conflict is said to be waivable. Conflicts "such as attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." United States v. Perez, 325 F.3d 115, 127. But, because a defendant who chooses to waive his right to conflict-free counsel gives up important rights -- and, in certain cases, may be required to "abandon a particular defense or line of questioning," id. -- the Second Circuit has prescribed in detail what procedures must be followed in a Curcio proceeding to effectuate the waiver:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in the narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

Perez, 325 F.3d at 127.

## II.    The Conflict

Under New York's Rules of Professional Conduct, a lawyer has certain duties with respect to confidentiality and conflicts of interest that may prevent her, absent a waiver, from representing two clients where concurrent representation "will involve the lawyer in representing differing interests" N.Y. Rules of Prof'l Cond. 1.7(a)(1). As the comment to Rule 1.7 explains,

> The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of the client and free of compromising influences and loyalties. Concurrent conflicts of interest, which can impair a lawyer's professional judgment, can arise from the lawyer's responsibilities to another client, a former client or a third person, or from the lawyer's own interests. A lawyer should not permit these competing responsibilities or interests to impair the lawyer's ability to exercise professional judgment on behalf of each client.

Rule 1.7, cmt. 1. The commentary goes on to identify particular situations that frequently give rise to a conflict of interest, such as where "a lawyer is required to cross-examine a client appearing

as a witness in a lawsuit involving another client," Id., cmt. 6, and situations in which the differing interests of clients "adversely affect[s] the lawyer's professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." Id., cmt. 8. With respect to representing multiple co-defendants in particular, the commentary describes the potential for conflict of interest as "so grave that ordinarily a lawyer should decline to represent more than one co-defendant." Id., cmt. 23.

It can scarcely be disputed that a potential conflict of interest exists in this case. As the commentary to Rule 1.7 suggests, if, for example, Petit were to testify at trial, either on his own behalf or on behalf of the Government, and if Quinn Emanuel were in possession of information obtained from their privileged conversations with Petit that would provide a fruitful basis for cross-examining him, their obligation to advocate diligently on behalf of Taylor pursuant to Rule of Professional Conduct 1.3(a) would come into conflict with their duty of loyalty to Petit under Rule 1.7(c). In such situations, the witness is "entitled to full protection in preserving the confidentiality of [his] privileged communications" with his attorney and the trial judge must "exert every reasonable effort to prevent inadvertent disclosures of confidential information." United States v. Armedo-Sarmiento, 524 F.2d 591, 593 (2d Cir. 1975). Thus, in the situation hypothesized, absent a waiver of the attorney-client privilege by Petit, Quinn Emanuel's ability to zealously advocate for Taylor would be compromised.

It is true that, at the present time, it is unknown whether Petit will become a witness for the Government or whether any testimony he may offer on his own behalf would be detrimental to Taylor's defense. Taylor should, however, be informed of the conflict that could arise if Petit were to testify, as well as the possibility that Quinn Emanuel's ongoing duty of loyalty to Petit may impair the firm's ability to advise Taylor on subjects such as the merits and demerits of cooperation with the Government.

While the Government believes that a potential conflict exists in this case, it is equally clear that the conflict is waivable. See Armedo-Sarmiento, 524 F.2d at 593 (reversing a disqualification order based on counsel's prior representation of a government witnesses, because "the district court did not give sufficient weight" to the defendant's right to counsel of his choosing). In particular, where the former client has not sought disqualification of counsel, where the prior representation was limited in nature, and where the current client is willing to allow counsel's cross-examination of the former client/witness to be confined to matters in the public record or otherwise disclosed by the Government, the Court of Appeals has signaled that a Curcio proceeding is generally adequate to protect the rights of the current client and the interest of the public in the integrity of the criminal justice system. United States v. Cunningham, 672 F.2d 1064, 1073 (2d Cir. 1982).

## III.    Conclusion

The Government therefore respectfully requests that the Court conduct a hearing to advise Taylor of his right to conflict-free representation and to inquire as to whether he understands the potential conflict in accordance with the procedures established in United States v. Curcio. If Taylor subsequently informs the Court that he wishes to proceed with Quinn Emanuel as his primary counsel, the Government requests that the Court elicit a narrative response from the

defendant designed to ascertain whether he is fully aware of the risks involved in the representation provided by Quinn Emanuel, who may at some point have divided loyalties, and determine whether Taylor is making a knowing and intelligent waiver of his right to conflict-free representation.  For the convenience of the Court, the Government is attaching a set of proposed questions to be put to the defendant as part of the Curcio inquiry.

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney

          By:      /s/ Scott Hartman
                              Edward Imperatore
                              Scott Hartman
                              Daniel Tracer
                              Assistant United States Attorneys
                              (212) 637-2357

cc: All counsel of record (by ECF)

**Proposed *Curcio* Examination**
**United States v. William Taylor, 19 Cr. 850 (JSR)**

## A. Introductory Questions To Establish Competence

Age

Education

Current medications

Alcohol, drugs, medications within past 24 hours

Is anything interfering with your ability to understand what is happening here today?

## B. Potential Conflict of Interest Posed by Quinn Emanuel's Representation

1.  Are you satisfied with the services of Quinn Emanuel thus far in the case?

2.  Are you aware that Quinn Emanuel previously represented Mr. Petit in this matter as well as yourself?

3.  Do you understand that the fact that Quinn Emanuel previously represented Mr. Petit may mean that, in some cases, Quinn Emanuel may be required to put Mr. Petit's interests before yours?

4.  Specifically, do you understand that if Petit were to testify in this case, Quinn Emanuel would be limited in its ability to ask questions on cross-examination that could be damaging to his credibility or favorable to your defense?

5.  Likewise, do you understand the Quinn Emanuel may be limited in making certain arguments at trial on your behalf because of their continuing duties to Petit?

6.  Do you understand that Quinn Emanuel's duty of loyalty to Mr. Petit may limit the firm's ability to advise you regarding the merits and demerits of cooperating with the Government in this case?

7.  Do you understand that the greatest danger to you may be that there may be a way in which Quinn Emanuel's representation of you will be impaired by its previous representation of Mr. Petit that is not currently foreseeable?

8.  Tell me in your own words what your understanding is of the potential conflicts of interest arising in this situation.

## C. The Right To Conflict-Free Representation

8.   Do you understand that, in every criminal case, including this one, the defendant is entitled to assistance of counsel whose loyalty to him is undivided, who is not subject to any factor that might in any way intrude upon an attorney's loyalty to his interests?  In other words, do you understand that you are entitled to attorneys who have only your interests in mind, and not the interests of any other client?

9.   Have you received any inducements, promises or threats with regard to your choice of counsel in this case?

10.   Have you consulted with any attorneys other than Quinn Emanuel about the dangers to you of this potential conflict of interest?

11.   Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you today that you wish to discuss with a conflict-free attorney?

12.   Have you consulted with independent counsel about the conflict or potential conflict of interest that I have described to you today?  Has counsel fully advised you about the situation?  Do you wish to receive additional time to consult with independent counsel?

## D. Continuation of Curcio Hearing

13.   After considering all that I have said today about the ways in which Quinn Emanuel's previous representation of Mr. Petit may adversely affect your defense, do you believe that it is in your best interest to continue Quinn Emanuel as your attorneys?  Is that your wish?

14.   Do you understand that by choosing to continue with Quinn Emanuel as your attorneys, you are waiving your right to be represented solely by an attorney who has no potential conflict of interest?

15.   Are you knowingly and voluntarily waiving your right to conflict-free representation?

16.   Do you waive any post-conviction argument, on appeal or otherwise, that by virtue of Quinn Emanuel's previous representation of Mr. Petit, you were denied effective assistance of counsel?

17.   Is there anything that I have said that you wish to have explained further?