

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NEW YORK 10019
+1 212 839 5951
+1 212 839 5300 FAX

AMERICA • ASIA PACIFIC • EUROPE



January 23, 2020

Hon. Jed. S. Rakoff
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *United States v. Parker H. Petit and William Taylor*, 19 Cr. 850 (JSR)

Dear Judge Rakoff:

  We write respectfully on behalf of our client, MiMedx Group, Inc. ("MiMedx" or "the Company"), in connection with the above-referenced matter.

  On the evening of January 22, 2020, Defendants Parker H. Petit and Bill Taylor ("Defendants") filed a Motion to Compel. *See* ECF #24. Attached to Defendants' Motion as "Exhibit J" (ECF #24-10), "Exhibit M" (ECF #24-13), and "Exhibit Q" (ECF# 24-17) are excerpts of documents that MiMedx's former auditor, Ernst & Young ("EY"), inadvertently produced to staff of the Securities and Exchange Commission ("SEC") in response to an SEC subpoena, without MiMedx's knowledge or consent. We understand that the SEC staff provided these documents to the U.S. Attorney's Office, which, in turn, disclosed them to Defendants. The contents of these Exhibits were also reproduced and described in Defendants' motion. Defendants' filing of these documents on the public docket on January 22, 2020 was the first time that MiMedx learned of their production to the SEC, the U.S. Attorney's Office, and Defendants. These inadvertently produced documents contain information subject to the work-product protection of MiMedx. As such, MiMedx is moving to quash Exhibits J, M, and Q to Defendants' Motion to Compel, as well as any references thereto in Defendants' Motion to Compel (ECF #24).

  The contents of Exhibits J, M, and Q memorialize the impressions, opinions, and legal advice of King & Spalding, LLP ("K&S"), outside counsel to the Audit Committee of the Board of Directors of MiMedx. K&S was retained by the Audit Committee to conduct an internal investigation, which was initiated following discussions with EY, MiMedx's external auditor at the time. In particular, the internal investigation was initiated in February 2018 to investigate allegations raised in ongoing government investigations, civil litigation, and threats of litigation.

# SIDLEY

Hon. Jed S. Rakoff
January 23, 2020

In other words, when the internal investigation was initiated, MiMedx was already in the midst of government investigations and civil litigation—and reasonably anticipated further litigation—touching on the subject matters of the internal investigation. Indeed, the issues raised in the then-existing litigation and anticipated litigation were what prompted EY to request that the Audit Committee conduct the internal investigation.

Exhibits J, M, and Q attached to Defendant's Motion to Compel are notes from meetings between EY and K&S that reflect K&S's investigative strategy and mental impressions, and describe certain findings of their investigation. Specifically:

- Exhibit J contains notes from a July 16, 2018 meeting between EY and K&S that memorialize K&S's impressions and proposed legal strategy in light of certain investigative findings, as well as K&S's strategy for investigative next steps.

- Exhibit M contains notes from a meeting between EY and K&S on September 26, 2018, which memorialize a presentation K&S provided to EY on the status of its internal investigation. K&S's mental impressions as well as its legal conclusions from its investigative findings are reflected throughout this document.

- Exhibit Q contains notes from a March 22, 2018 meeting between EY and K&S, which lays out in detail K&S's investigation plan and strategy, including their plans for witness interviews, analysis of accounting data, document review search terms, and the appropriate scope and subject matter for the internal investigation.

These documents should not have been produced to the SEC staff or U.S. Attorney's Office, or shared with the Defendants because they contain MiMedx's protected work product. The work-product doctrine shields from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3); *see United States v. Noble*, 422 U.S. 225, 236 (1975) (work-product doctrine "applies to criminal litigation as well as civil"). Courts nationwide, including Courts in this District and Circuit, have consistently recognized that materials generated during an internal investigation conducted in anticipation of litigation qualify for work product protection. For example, in *International Design Concepts, Inc. v. Saks, Inc.*, Judge Castel held that an internal investigation report prepared by outside counsel for the company's independent audit committee was subject to work-product protection and that the company had not waived the protection by sharing the report with the company's auditor. *See* No. 05 CIV. 4754(PKC), 2006 WL 1564684, at *1 (S.D.N.Y. June 6, 2006). The Second Circuit reached the same conclusion in *In re Grand Jury Subpoena*, where the court upheld a claim of work-product protection over a report

2

# SIDLEY

Hon. Jed S. Rakoff
January 23, 2020

prepared by outside counsel for the audit committee with the assistance of the company's independent auditor. *See* 599 F.2d 504, 506, 508, 511–12 (2d Cir. 1979).[1]

Consistent with Judge Castel's decision in *Internal Design Concepts*, other Courts in this District have likewise ruled that work-product protection typically is not waived by providing a document to a company's auditors, because an auditor "is not reasonably viewed as a conduit to a potential adversary." *In re Pfizer Inc. Sec. Litig.*, No. 90 CIV. 1260 (SS), 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993); *accord, e.g., In re Weatherford Int'l Sec. Litig.*, No. 11 CIV. 1646 (LAK) (JCF), 2013 WL 12185082, at *5 (S.D.N.Y. Nov. 19, 2013); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Alcoa S.S. Co.*, No. 04–Civ–4309, 2006 WL 278131, at *2 (S.D.N.Y. Feb.2, 2006); *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 300 (S.D.N.Y. 2003); *Gramm v. Horsehead Indus., Inc.*, No. 87 CIV. 5122 (MJL), 1990 WL 142404, at *2–*3 (S.D.N.Y. Jan. 25, 1990).[2] Thus, where a company and its auditor work together to "prevent, detect, and root out corporate fraud," there is not an adversarial relationship notwithstanding the investigative role that independent auditors perform. *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445–49 (S.D.N.Y. 2004). The exception, as Your Honor and other Judges of this Court have recognized, is where the company and its auditor have a "tangible adversarial relationship." *Id.* at 447 (distinguishing *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 116 (S.D.N.Y. 2002)); *see also SEC v. Gupta*, 281 F.R.D. 169, 172 (S.D.N.Y. 2012) (citing *Medinol* for the proposition that sharing work product with an auditor waives protection only where the auditor "d[oes] not share common interests with corporation").

Under these authorities, Exhibits J, M, and Q plainly qualify for work-product protection, because they capture counsel's "mental impressions and professional judgments" as delivered in "confidential oral or written report[s] … to the company's auditors of the results of his or her

---

[1] *Accord, e.g., Robinson v. Time Warner, Inc.*, 187 F.R.D. 144, 146–47 (S.D.N.Y. 1999); *BMO Harris Bank, N.A. v. Richert Funding, LLC*, No. 1:15-CV-03886-AT-JKL, 2016 WL 11531461, at *6 (N.D. Ga. Dec. 27, 2016); *Adams v. City of Montgomery*, 282 F.R.D. 627, 633–34 (M.D. Ga. 2012); *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 385–87 (E.D. Pa. 2006); *EEOC v. Rooms To Go, Inc.*, No. 8:04-CV-2155-T-24TBM, 2005 WL 8160237, at *4 (M.D. Fla. Dec. 2, 2005); *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 686 (W.D. Mich. 1996); *In re Dayco Corp. Derivative Sec. Litig.*, 99 F.R.D. 616, 619 n.2 (S.D. Ohio 1983); *In re Grand Jury Subpoena*, 478 F. Supp. 368, 374 (E.D. Wis. 1979); *see also* David M. Greenwald *et al.*, 1 Testimonial Privileges § 1:136 (3d ed. Sept. 2019 update) ("The work product doctrine will generally apply with respect to an internal investigation that is undertaken in anticipation of litigation, whether it is conducted by counsel or by other agents of the corporation.").

[2] Decisions from other courts nationwide are in accord. *See United States v. Deloitte LLP*, 610 F.3d 129, 139 (D.C. Cir. 2010); *S.E.C. v. Berry*, No. C07-04431 RMW HRL, 2011 WL 825742, at *8 (N.D. Cal. Mar. 7, 2011); *Westernbank Puerto Rico v. Kachkar*, No. CIV. 07-1606 ADC/BJM, 2009 WL 530131, at *7 (D.P.R. Feb. 9, 2009); *Vacco v. Harrah's Operating Co.*, No. CIV.A107CV0663TJMDEP, 2008 WL 4793719, at *6 (N.D.N.Y. Oct. 29, 2008); *Regions Fin. Corp. v. United States*, No. 2:06–CV–00895–RDP, 2008 WL 2139008, at *8 (N.D. Ala. May 8, 2008); *In re JDS Uniphase Corp. Sec. Litig.*, No. C–02–1486 CW, 2006 WL 2850049, at *1 (N.D. Cal. Oct. 5, 2006); *Frank Betz Assocs., Inc. v. Jim Walter Homes, Inc.*, 226 F.R.D. 533, 535 (D.S.C. 2005); *Gutter v. E.I. Dupont de Nemours & Co.*, No. 95–CV–2152, 1998 WL 2017926, at *5 (S.D. Fla. May 18, 1998).

# SIDLEY

Hon. Jed S. Rakoff
January 23, 2020

investigation." *Int'l Design Concepts*, 2006 WL 1564684, at *3; *accord, e.g., Deloitte LLP*, 610 F.3d at 136 ("The work product privilege does not depend on whether the thoughts and opinions were communicated orally or in writing, but on whether they were prepared in anticipation of litigation."). MiMedx's Audit Committee commissioned the K&S internal investigation when the Company was in the midst of civil litigation and government investigations to investigate allegations raised in those matters. Far from there being a "tangibl[y] adversarial relationship" between MiMedx and EY, MiMedx launched the investigation at EY's suggestion, invested significant resources in the investigation, cooperated with EY in the course of the investigation, and took decisive remedial action based on the findings of the investigation.

Nor did EY's production of MiMedx's work product to the SEC effect a waiver of the protection. *See United States v. Gangi*, 1 F. Supp. 2d 256, 264 (S.D.N.Y. 1998) (inadvertent production will not waive work-product protection unless the producing party "evinced such extreme carelessness as to suggest that it was not concerned with the protection"). Instead, the production of these documents was a direct result of an inadvertent technical error and done without MiMedx's knowledge, authorization or consent. In responding to the SEC subpoenas, EY had collected documents from its files related to MiMedx. The Company and EY then coordinated on a process to address records that were subject to MiMedx's work-product protection. Specifically, MiMedx developed a broad set of search terms targeting potential subject areas likely to involve protected information, and EY ran these search terms against documents it identified as responsive to the SEC subpoenas. EY then provided MiMedx's counsel copies of all documents that hit on these search terms, and MiMedx's counsel reviewed those documents to make claims of work-product protection. We understand, however, that Exhibits J, M, and Q were contained in a discrete subset of hard-copy files which, due to an inadvertent technical error, were never made available to MiMedx's counsel for review, notwithstanding that these documents contained several of MiMedx's search terms and should have been subject to the review.

\* \* \*

# SIDLEY

Hon. Jed S. Rakoff
January 23, 2020

      For these reasons, we respectfully request that your Honor grant our request to quash Exhibit J (ECF #24-10), Exhibit M (ECF #24-13), and Exhibit Q (ECF# 24-17), and any reference to these documents in Defendants' Motion to Compel, and have these materials removed from the public docket. We further respectfully request that the Court order Defendants, the SEC, and the Department of Justice to return or destroy all copies of the documents referenced above in their possession in whatever format.

      Thank you for your consideration of this application.

Respectfully submitted,

David M. Rody

CC: William Burck
William Weinreb
Michael Carlinsky
Eric Bruce
Altin Sila
Scott Hartman
Eddie Imperatore
Daniel Tracer
Kevin Comeau
Ty Cottrill
Stephen McKenna

5