UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

   - against -

PARKER H. PETIT and
WILLIAM TAYLOR

     Defendants.

No. 19 Cr. 850 (JSR)

**MEMORANDUM OF LAW IN SUPPORT OF
WILLIAM TAYLOR'S MOTION *IN LIMINE* #1:
TO EXCLUDE EVIDENCE RELATING TO THE
MIMEDX AUDIT COMMITTEE'S INVESTIGATION
AND FINDINGS IN 2018 AND 2019**

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
William Weinreb
Michael Packard
111 Huntington Ave., Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
billweinreb@quinnemanuel.com
michaelpackard@quinnemanuel.com

William Burck
Daniel Koffmann
51 Madison Avenue, 22nd Floor
New York, New York
Tel: (212) 849-7000
Fax: (212) 849-7100
williamburck@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for Defendant William Taylor*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...........................................................................................................................2

I.      THE INVESTIGATION AND PURPORTED FINDINGS ARE IMPROPER
        OPINION EVIDENCE ON AN ULTIMATE ISSUE FOR THE JURY. ...........................2

II.     THE INVESTIGATION FINDINGS ARE HEARSAY. ....................................................3

III.    THE 403 BALANCING TIPS SHARPLY IN FAVOR OF EXCLUSION. .......................4

IV.     AT A MINIMUM, THE COURT SHOULD EXCLUDE ANY REFERENCE TO
        THE WHITEPAPER SUBMITTED TO THE AUDIT COMMITTEE ON
        BEHALF OF MR. PETIT AND MR. TAYLOR.................................................................6

CONCLUSION.........................................................................................................................8

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Abascal v. Fleckenstein*,
  820 F.3d 561, 565–66 (2d Cir. 2016) .................................................................... 3, 4

*Chalco v. Belair*,
  No. 15 Civ. 340(VLB), 2019 WL 456162, at *4 (D. Conn. Feb. 5, 2019) ............................ 2, 5

*Nimely v. City of New York*,
  414 F.3d 381, 398 (2d Cir. 2005) ........................................................................ 5

*Torres v. Gristede's Operating Corp.*,
  628 F. Supp. 2d 447, 470 (S.D.N.Y. 2008) ............................................................. 3

*United States v. Doyle*,
  No. 16 Cr. 506 (ALC), 2018 WL 1902506, at *19 (S.D.N.Y. Apr. 19, 2018) ......................... 7

*United States v. Duncan*,
  42 F.3d 97, 101 (2d Cir. 1994) .......................................................................... 2

*United States v. Freidin*,
  849 F.2d 716, 720 (2d Cir. 1988) ....................................................................... 3

*United States v. Lemire*,
  720 F.2d 1327, 1351 (D.C. Cir. 1983) ................................................................. 4

*United States v. Reyes*,
  239 F.R.D. 591, 600 (N.D. Cal. 2006) ............................................................ 2, 3, 4, 5

*United States v. Scop*,
  846 F.2d 135, 140, 142 (2d Cir. 1988) .............................................................. 2, 5

*United States v. Shanahan*,
  No. S1 07 Cr. 175 (JCH), 2008 WL 619213, at *3 (E.D. Mo. Mar. 3, 2008) .......................... 4

*United States v. Strother*,
  49 F.3d 869, 876 (2d Cir. 1995) ..................................................................... 3, 4

*Westmoreland v. CBS Inc.*,
  601 F. Supp. 66, 68–70 (S.D.N.Y. 1984) ......................................................... 2, 4, 5, 6

### <u>Rules and Regulations</u>

Fed. R. Evid. 805 ............................................................................................ 4

Defendant William Taylor respectfully submits this memorandum of law in support of his motion *in limine* to exclude evidence relating to the MiMedx Audit Committee's investigation and findings.

## PRELIMINARY STATEMENT

The investigation and purported findings of the Audit Committee of MiMedx's Board of Directors are inadmissible because they constitute improper opinion evidence on an ultimate issue for the jury, they are hearsay, and their minimal probative value is substantially outweighed by the risk of unfair prejudice, confusion, and delay.  After spending 15 months and $42 million boiling the ocean in search of *some* basis to scapegoat former management, the MiMedx Audit Committee announced in May 2019 that it had concluded there were "accounting irregularities" attributable to Defendant Bill Taylor, codefendant Pete Petit, MiMedx's former CFO Michael Senken, and former Controller John Cranston.  *See* MiMedx Grp., Inc., Current Report at 2–3 (Form 8-K) (May 23, 2019), available at https://bit.ly/331Yc01 ("*Audit Committee Announcement*"). [1]  The Audit Committee's announcement focused largely on sales to a distributor called AvKARE, MiMedx's "largest distributor," *see id.* —sales that are not charged in the Indictment.  The announcement only briefly referenced the distributors at issue in the five discrete sales charged in the Indictment.  *Id.*  The Audit Committee also leveled other unsubstantiated allegations at former management relating to, among other things, personnel decisions, "tone" of management, and interactions with auditors.  *See id.*  In these circumstances, permitting the government to raise the Audit Committee's investigation and its purported findings would inject irrelevant, improper, hearsay evidence, the probative value of which is

---

[1]    Unless otherwise noted, we have omitted internal citations, quotation marks, and alterations from citations in this brief.  We have also shrunk lengthy website names using bit.ly's URL shortener.

substantially outweighed by the risk of unfair prejudice, confusion, and delay.  The Court should

exclude it.

## **ARGUMENT**

### I.    **THE INVESTIGATION AND PURPORTED FINDINGS ARE IMPROPER OPINION EVIDENCE ON AN ULTIMATE ISSUE FOR THE JURY.**

The only possible relevance of the investigation findings would be to show that the Audit

Committee concluded (albeit erroneously) that Mr. Taylor willfully caused MiMedx's financial

statements to have inaccurate revenue figures, but that is not permissible under the Federal Rules

of Evidence.  The admission of such evidence would invade the province of the jury to find facts

and of the Court to decide law.  For example, the Audit Committee accused Mr. Taylor of

making material misstatements and omissions and "manipulat[ing] the timing and recognition of

revenue" such that MiMedx's "revenue recognition was improper under GAAP."  *Audit*

*Committee Announcement* at 3.  Courts routinely exclude such evidence because it "usurp[s]

either the role of the trial judge in instructing the jury as to the applicable law or the role of the

jury in applying the law to the facts before it."  *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.

1994); *see, e.g.*, *Chalco v. Belair*, No. 15 Civ. 340 (VLB), 2019 WL 456162, at *4 (D. Conn.

Feb. 5, 2019) ("The Court agrees that any factual findings and legal conclusions made by the

investigations are inadmissible . . . ."); *United States v. Reyes*, 239 F.R.D. 591, 600 (N.D. Cal.

2006) ("[A]n attorney's formal opinion about whether any crimes were committed would not be

relevant evidence—that determination is for a jury of [defendant's] peers to make . . . .");

*Westmoreland v. CBS Inc.*, 601 F. Supp. 66, 69 (S.D.N.Y. 1984) (excluding report that

"expresses [the author's and others'] opinion in a manner that would not be permitted if [they]

were called to testify").  Investigators' credibility determinations are likewise irrelevant.  *See*

*United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) ("The credibility of witnesses is

exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial."). The Court should not permit the Audit Committee's investigation to interfere with the jury's assessment of relevant evidence.

## II.   THE INVESTIGATION FINDINGS ARE HEARSAY.

Moreover, the Audit Committee's findings are hearsay not subject to an exception. An investigation report generally is inadmissible hearsay "unless it qualifie[s] as a business record under Federal Rule of Evidence 803(6)." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 470 (S.D.N.Y. 2008). That is not the case here. *First*, records from the internal investigation were made in 2018 or 2019, several years after the five discrete sales charged in the Indictment, which occurred between June 29 and December 31, 2015. *See* Indictment ¶ 66. A three- to four-year lapse does not qualify as "at or near the time" within the meaning of Rule 803(6)(A). *See, e.g.*, *Abascal v. Fleckenstein*, 820 F.3d 561, 565 (2d Cir. 2016) ("A six month delay is too long a time to be considered a contemporaneous recording."); *United States v. Strother*, 49 F.3d 869, 876 (2d Cir. 1995) (memorandum "made six months after the relevant events" did not satisfy the "timeliness" requirement).

*Second*, internal investigations into potential wrongdoing are not a "regularly conducted activity" or "regular practice" of MiMedx. The Second Circuit has refused to allow "unusual or 'isolated' events" to come within the ambit of Rule 803(6). *Strother*, 49 F.3d at 876; *see United States v. Freidin*, 849 F.2d 716, 720 (2d Cir. 1988) ("reading strictly the 'regular practice' requirement" and rejecting "more generous interpretations" of Rule 803(6)).

*Third*, the Audit Committee's outside attorneys, who almost certainly drafted the findings, do not qualify as people "with knowledge." *See Reyes*, 239 F.R.D. at 600 ("[T]he second-hand reflections, findings, and conclusions of investigating attorneys would not themselves become evidence at trial to prove the truth of the matters they assert."). Moreover,

3

any documents prepared by the Audit Committee's attorneys are "narrative statements based on multiple hearsay," *Strother*, 49 F.3d at 876, which are "a far cry from the simple act of recording observable information—the type of regularly conducted activity envisioned by this exception," *Abascal*, 820 F.3d at 565–66.   Any documents memorializing or summarizing the work and findings of the Audit Committee's outside professionals would amount to layers upon layers of inadmissible hearsay and should be excluded.  *See* Fed. R. Evid. 805; *Strother*, 49 F.3d at 876.

For these reasons, the caselaw is clear that documents "prepared as part of an investigation into substantial abnormal procedures are not prepared for a regular business purpose." *United States v. Lemire*, 720 F.2d 1327, 1351 (D.C. Cir. 1983); *accord United States v. Shanahan*, No. S1 07 Cr. 175 (JCH), 2008 WL 619213, at *3 (E.D. Mo. Mar. 3, 2008); *Reyes*, 239 F.R.D. at 600; *Westmoreland*, 601 F. Supp. at 69; *cf. Abascal*, 820 F.3d at 565 (non-profit's investigation of prison was not a "regularly conducted activity").

## III.   THE 403 BALANCING TIPS SHARPLY IN FAVOR OF EXCLUSION.

Even if the government could cure these deficiencies, introducing material from the investigation would violate Rule 403.  As discussed above at section I, the Rules of Evidence correctly ascribe little relevance to the conclusions of third parties about whether a defendant committed a crime—that is for the jury alone to decide.  Moreover, the Audit Committee's investigation here focused largely on conduct not alleged in the Indictment.  In particular, the announcement focuses primarily on sales to AvKARE, MiMedx's "largest distributor," which is not one of the four distributors discussed in the Indictment.  Moreover, the investigation appears to have focused on former management's failure to comply with certain corporate policies and its supposed failure to maintain an appropriate "tone at the top."  *See Audit Committee Announcement* at 5.  Whether Mr. Taylor engaged in wrongdoing with a separate distributor that will not otherwise be at issue in this case or whether he set a "tone" in his management style that

4

suited the Audit Committee has nothing to do with the issues before the jury.  Courts properly exclude an investigation report that "considers and discusses a number of other controversies that are irrelevant to the trial" under Rule 403.  *Westmoreland*, 601 F. Supp. at  68.

Weighing against the minimal probative value is the substantial risk of unfair prejudice, confusion, and delay.  Admitting the Audit Committee's factual findings and legal conclusions would be "highly prejudicial" because it "would give the appearance that the court was shifting to witnesses the responsibility to decide the case."  *Scop*, 846 F.2d at 140; *see also Chalco*, 2019 WL 456162, at *4 ("[D]ocuments from an internal investigation . . . were highly prejudicial to the extent that they might be used as proof that the facts are as the investigation found them to be . . . .").  Likewise the admission of any credibility determinations.  *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) ("[T]he credibility assessments to which [the expert] was allowed to testify should have been excluded . . . under Rule 403.").  The jury might also give the investigation undue weight, not realizing that the Audit Committee's outside professionals undoubtedly framed their conclusions to scapegoat former management and seek to limit the risk that MiMedx itself could be punished.  *Cf. Reyes*, 239 F.R.D. at 600 ("Documents produced in a full-fledged, one-time internal investigation into alleged corporate malfeasance . . . . lack the hallmarks of reliability . . . .").  And the Audit Committee's accusations of poor management, accounting irregularities, and policy violations risk confusing the jury.  *Cf. Westmoreland*, 601 F. Supp. at 69 ("marginal relevance" of report finding violations of defendant's "rules or guidelines" was "far outweighed by the potential for misunderstanding, confusion and prejudice").

Any evidence of the internal investigation is also gratuitous.  Documents, statements, and other information underlying the Audit Committee's conclusions are "equally available from

other sources or are already in evidence. . . . The fact that they are quoted in the [internal investigation r]eport adds nothing to their status as evidence." *Westmoreland*, 601 F. Supp. at 70. The government previously represented to the Court that the Audit Committee did not have all of the documents and witnesses that were available to the government. *See* Hr'g Tr. 10:4–24 (Jan. 23, 2020). Accordingly, any evidence related to the internal investigation would be cumulative and a waste of time.

## IV.   AT A MINIMUM, THE COURT SHOULD EXCLUDE ANY REFERENCE TO THE WHITEPAPER SUBMITTED TO THE AUDIT COMMITTEE ON BEHALF OF MR. PETIT AND MR. TAYLOR.

Under no circumstances should the government or any of its witnesses be permitted to refer to the whitepaper that Quinn Emanuel submitted to the Audit Committee on behalf of Mr. Taylor and Mr. Petit (both of whom Quinn Emanuel represented at the time). That whitepaper, which counsel submitted in lieu of making Mr. Taylor and Mr. Petit available for interviews, focused primarily on AvKARE and various whistleblowers, briefly touched on two of the four distributors alleged in the Indictment, and did not even discuss the other two at all. As to those distributors and other issues, the whitepaper details counsel's interpretations, based on a review of the narrow set of documents made available, hypothesized theories of liability, and even "best guess[es]" as to certain events. The government now intends to offer into evidence the fact that the whitepaper stated that:

> Pete had no involvement in this [2015] loan [to SLR] other than to provide Pat Cua and Todd Campbell Morrison's phone number and a recommendation. He did not ask them to loan Morrison money and had nothing to do with the loan itself. He maintained an arm's-length distance from the transaction. (Pete's family trusts and estates lawyer, Stevie Casteel, who normally copies him on family trusts and estate matters, mistakenly copied him on a message to his children attaching the SLR note, but Pete did not open the attachment; he simply forwarded the note to Morrison.)

6

Just like every other document generated during the course of the internal investigation, this single memorandum written by counsel is not relevant to determining whether Mr. Taylor and Mr. Petit willfully defrauded shareholders in 2015.  *See supra* §§ I, III.  But there is an even more fundamental problem with injecting this issue into the trial, which is that it raises the specter of turning Mr. Taylor's trial counsel into witnesses against his codefendant, Mr. Petit, whom Mr. Taylor's trial counsel represented when they submitted the white paper.  This puts both Mr. Taylor and Mr. Petit in an impossible position, particularly because it appears the governments' goal is stoke an inference that Mr. Petit was not forthright with his former counsel. This practice, of course, is "distasteful" and "strongly disfavored" in any case, since the jury may infer from the government's use of counsel's statements against the defendants that the "client engaged in wrongdoing" and, indeed, "speculate regarding the reasons for [Mr. Petit]'s obtaining a new attorney."  *United States v. Doyle*, No. 16 Cr. 506 (ALC), 2018 WL 1902506, at *19 (S.D.N.Y. Apr. 19, 2018) (excluding statements of former defense counsel).  Moreover, the implication that the whitepaper contained false or misleading information could well "overwhelm the[ jury's] deliberative process" with "speculat[ion] as to why counsel stated these allegedly false facts," including "questions regarding defense counsel's credibility."  *Id.*  Here, the prejudice is even more extreme, given that the same law firm and same lawyers who submitted the whitepaper will be present at trial defending Mr. Petit's codefendant.

Thus, beyond all the reasons for excluding the Audit Committee investigation in its entirety, at a minimum, the Court should exclude evidence relating to the whitepaper because it creates thorny witness-advocate issues that cause severe prejudice to Mr. Taylor and Mr. Petit while adding nothing that the government is not already able to introduce through other evidence.

## **CONCLUSION**

For the foregoing reasons, the Court should exclude any evidence relating to the fact of, or purported findings reached by, the MiMedx Audit Committee's investigation, as well as any evidence relating to the whitepaper.

Dated: Boston, Massachusetts
     October 5, 2020

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

/s/ William Weinreb
William Weinreb
Michael Packard
111 Huntington Ave., Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
billweinreb@quinnemanuel.com
michaelpackard@quinnemanuel.com

William Burck
Daniel Koffmann
51 Madison Avenue, 22nd Floor
New York, New York
Tel: (212) 849-7000
Fax: (212) 849-7100
williamburck@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for Defendant William Taylor*