UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against -<br><br>PARKER H. PETIT and<br>WILLIAM TAYLOR<br><br>Defendants. | No. 19 Cr. 850 (JSR) |

**MEMORANDUM OF LAW IN SUPPORT OF
WILLIAM TAYLOR'S MOTION *IN LIMINE* #9:
TO REQUIRE THE GOVERNMENT TO PROVE THE PREREQUISITES
FOR ADMISSION OF CERTAIN ALLEGED COCONSPIRATOR STATEMENTS
OUTSIDE THE PRESENCE OF THE JURY
AND PRIOR TO ADMITTING THEM INTO EVIDENCE**

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
William Weinreb
Michael Packard
111 Huntington Ave., Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
billweinreb@quinnemanuel.com
michaelpackard@quinnemanuel.com

William Burck
Daniel Koffmann
51 Madison Avenue, 22nd Floor
New York, New York
Tel: (212) 849-7000
Fax: (212) 849-7100
williamburck@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for Defendant William Taylor*

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*United States v. Asaro*,
  No. 14 Cr. 26(ARR), 2015 WL 5841804, at *2  (E.D.N.Y. Oct. 7, 2015) ................................ 3

*United States v. Atehortva*,
  17 F.3d 546, 552 (2d Cir. 1994) .................................................................................... 4

*Cordero v. United States*,
  No. 01 Cr. 74 (SAS), 2010 WL 5347624, at *3 (S.D.N.Y. Dec. 28, 2010) ............................. 2

*United States v. Diaz*,
  176 F.3d 52, 83 (2d Cir. 1999) ..................................................................................... 2

*United States v. DiCarlo*,
  131 F. Supp. 2d 537, 539 (S.D.N.Y. 2001) ...................................................................... 5

*United States v. Garcia-Torres*,
  280 F.3d 1, 4  (1st Cir. 2002) ........................................................................................ 4

*United States v. Gigante*,
  166 F.3d 75, 82 (2d Cir. 1999) ................................................................................. 2, 3

*United States v. Heatley*,
  994 F. Supp. 483, 490 (S.D.N.Y. 1998) ...................................................................... 1, 6

*United States v. Russo*,
  302 F.3d 37, 45 (2d Cir. 2002) ..................................................................................... 2

### Rules and Regulations

Fed. R. Evid. 103(d) ........................................................................................................... 5

Fed. R. Evid. 104(c)(3) ...................................................................................................... 5

Fed. R. Evid. 801(d)(2)(E) ...................................................................................... 1, 2, 3, 4

Defendant William Taylor respectfully submits this memorandum of law in support of his motion *in limine* to require the government to prove the prerequisites for admission of certain alleged coconspirator statements outside the presence of the jury and prior to admitting them into evidence.

## ARGUMENT

The Court should not permit the government to introduce statements from eight of the twelve unindicted coconspirators it has identified to the defense—specifically, Majed al Tarayjem, Bassam El Hage, Bill McLaughlin, Tom Johnston, Mark Diaz, Christopher Cashman, Brent Miller, and David Nix—unless, *and until*, the Court finds these individuals qualify as coconspirators within the meaning of Rule 801(d)(2)(E). Although it often makes sense to admit coconspirator statements subject to connection under Rule 104, doing so here would be improper. This is because (1) the government is so unlikely to be able to establish that these individuals' statements qualify under Rule 801(d)(2)(E), and (2) it appears a material portion of what the government intends to offer into evidence consists of these individuals' statements. In these circumstances, a curative instruction given at the end of trial will not be sufficient to purge the taint of this evidence, and the prejudice to Mr. Taylor will be extreme. Rather than risk the possibility of having to declare a mistrial at the end of the trial, the Court should require the government to demonstrate that Majed al Tarayjem, Bassam El Hage, Bill McLaughlin, Tom Johnston, Mark Diaz, Christopher Cashman, Brent Miller, and David Nix are coconspirators within the meaning of Rule 801(d)(2)(E) *prior to* admitting their statements under the coconspirator exception. *See, e.g.*, *United States v. Heatley*, 994 F. Supp. 483, 490 (S.D.N.Y. 1998) (Sotomayor, J.) (encouraging the government to "seek from the Court an advance ruling

on any potentially doubtful evidence under the *Bourjaily* standard which it might seek to introduce at trial").[1]

The government will not be able to meet its burden with respect to these individuals because there is no documentary evidence sufficient under Rule 801(d)(2)(E) to establish the existence of a conspiracy, nor is there any indication that testimony will suffice, either. A statement may qualify for admission under Rule 801(d)(2)(E) upon a showing "that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). Mere association between the declarant and the defendant is not enough. There "must be a conspiracy with some specific criminal goal," because it "is the unity of interests stemming from a specific shared criminal task that justifies Rule 801(d)(2)(E) in the first place." *Id.* at 83. A statement may qualify if the objective of the conspiracy is tortious or otherwise wrongful, even if not criminal *per se*. *See, e.g.*, *United States v. Russo*, 302 F.3d 37, 45 (2d Cir. 2002). In order to make the required showing, the government must offer "independent corroborating evidence" in addition to the statements being offered as coconspirator statements, because "these hearsay statements are presumptively unreliable." *United States v. Diaz*, 176 F.3d 52, 83 (2d Cir. 1999); *accord Cordero v. United States*, No. 01 Cr. 74 (SAS), 2010 WL 5347624, at *3 (S.D.N.Y. Dec. 28, 2010).

There is no reason to believe that there will be evidence establishing that the eight individuals identified above were engaged in a conspiracy for purposes of Rule 801(d)(2)(E). For example, Majed al Tarayjem and Bassam El Hage worked at the company identified as

---

[1] Unless otherwise noted, we have omitted internal citations, quotation marks, and alterations from citations in this brief. We have also shrunk lengthy website names using bit.ly's URL shortener.

2

Distributor-4 in the Indictment. The evidence will show that they made arm's-length purchases from MiMedx seeking the best possible terms for their own company. There is no reason to think they knew (or cared about) how MiMedx accounted for the transaction, whether it met the prerequisites for revenue recognition under GAAP and SEC standards, and what auditors and investors knew about the transaction. The most the evidence is likely to show is that MiMedx personnel, including Mr. Taylor, communicated to them that Distributor-4's business was important to MiMedx. That has nothing to do with a conspiracy to mislead investors, commit accounting fraud, or achieve any other improper objective. The evidence will show that Mr. Taylor and these witnesses were nothing more than counterparties to a business deal. That is not sufficient under Rule 801(d)(2)(E). *See Gigante*, 166 F.3d at 83 (admission of statements under Rule 801(d)(2)(E) requires "unity of interests"); *cf. United States v. Asaro*, No. 14 Cr. 26 (ARR), 2015 WL 5841804, at *2 (E.D.N.Y. Oct. 7, 2015) (defendant who extorted business owner was not part of conspiracy with business owner simply "because he wished for the business to succeed and profit").

Bill McLaughlin and Tom Johnston are in a similar position. They worked at Distributor-1 and Distributor-3, respectively, and the government does not intend to call either of them as witnesses. And while it appears that the CEOs of those distributors will claim they committed misconduct in their arrangements with MiMedx, there is no indication from the discovery that Mr. McLaughlin or Mr. Johnston were complicit in that misconduct or otherwise engaged in a conspiracy with Mr. Taylor. As to Mr. Johnston, for example, the only conspiracies he appears to have been part of are a fraud he and Brian Martin carried out on MiMedx and a separate fraud they carried out involving fake sales of another company's products. Similarly, while Mr. McLaughlin appears to have been aware of certain facts the government will allege

were inconsistent with MiMedx recognizing revenue from Distributor-1, there is no basis to suggest that he was part of any conspiracy within the meaning of Rule 801(d)(2)(E).

Nor is there any apparent basis to find that Mark Diaz, Christopher Cashman, Brent Miller, and David Nix—all of whom worked at MiMedx—are coconspirators. The discovery reflects that each of these individuals played at most an immaterial role in negotiating the five transactions at issue in the Indictment, in determining how to account for those transactions, in communicating with auditors and accounting staff about these transactions, or in anything relevant to this case aside from the logistics of processing and fulfilling orders. That minimal involvement is not enough for them to be considered coconspirators. *See United States v. Garcia-Torres*, 280 F.3d 1, 4 (1st Cir. 2002) (for purposes of Rule 801(d)(2)(E), "it is hard to imagine how someone furnishing a peripheral service to a . . . conspiracy could be deemed to 'join' that conspiracy unless he knew both that the . . . conspiracy existed and that the peripheral service being furnished was designed to foster the conspiracy"); *cf. United States v. Atehortva*, 17 F.3d 546, 552 (2d Cir. 1994) (evidence was insufficient for conspiracy conviction of defendant hired to help in kidnapping in absence of evidence that defendant "knew of the existence of the . . . conspiracy and knowingly joined and participated in it"). What the government appears to be trying to do is to introduce otherwise hearsay emails exchanged among MiMedx employees that it recognizes are not business records and, even if they were, contain inadmissible hearsay within hearsay. For example, the emails quoted in paragraph 30 of the Indictment involved only Brent Miller, Mark Diaz, and David Nix—not Bill Taylor or Pete Petit. The only apparent basis for designating these individuals as coconspirators is the government's desire to evade the rule against hearsay and introduce these emails into evidence.

Admitting statements from these individuals subject to connection would be inappropriate because the likelihood the government will be able to make the connection is so low and the risk of prejudice from putting the statements before the jury is so high. Courts should "conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means," Fed. R. Evid. 103(d), and they should "conduct any hearing on a preliminary question so that the jury cannot hear it if . . . justice so requires," Fed. R. Evid. 104(c)(3). This is particularly true for witnesses like Majed al Tarayjem and Bassam El Hage, who are foreign businessmen for whom English is not their first language and who may have no familiarity with U.S. business customs and practices, much less with GAAP and SEC accounting standards. Permitting the government to put their words before the jury without Mr. Taylor having an opportunity to elicit the necessary context on cross-examination is extremely prejudicial.

Nor would a later instruction cure that prejudice. The trial is likely to be lengthy and complex—and is occurring at what no doubt will be a difficult time in the lives of many jurors—thereby raising the risk that jurors will become confused and unable to remember which hearsay statements ultimately were excluded and stricken and which were admitted. *Cf. United States v. DiCarlo*, 131 F. Supp. 2d 537, 539 (S.D.N.Y. 2001) (refusing to admit evidence under Rule 404(b) in a "complex but reasonably focused case" where it "would so hopelessly confuse the jury as to substantially outweigh, both in terms of unfair prejudice and of confusion, any possible probative value"). And for statements the government is most likely to highlight during the trial, the prejudice could be so great that the only remedy would be to declare a mistrial. The Court should not risk such a colossal waste of effort, particularly when judicial resources are as precious as they are right now.

In these circumstances, the Court should require the government to establish admissibility first, rather than admitting the statements subject to connection. *See Heatley*, 994 F. Supp. at 490. Whatever minimal inconvenience this may impose is far smaller than the prejudice to Mr. Taylor of erroneous admission and the prospect of a potential mistrial.

## CONCLUSION

For the foregoing reasons, the Court should require the government to prove the prerequisites for admission of certain alleged coconspirator statements outside the presence of the jury and prior to admitting them into evidence.

Dated: Boston, Massachusetts
October 5, 2020

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

/s/ William Weinreb
William Weinreb
Michael Packard
111 Huntington Ave., Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
billweinreb@quinnemanuel.com
michaelpackard@quinnemanuel.com

William Burck
Daniel Koffmann
51 Madison Avenue, 22nd Floor
New York, New York
Tel: (212) 849-7000
Fax: (212) 849-7100
williamburck@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for Defendant William Taylor*