UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- against -

PARKER H. PETIT and
WILLIAM TAYLOR

Defendants.

No. 19 Cr. 850 (JSR)

**DEFENDANTS PARKER H. PETIT'S AND WILLIAM TAYLOR'S
MEMORANDUM OF LAW IN OPPOSITION TO
THE GOVERNMENT'S MOTIONS *IN LIMINE***

FRESHFIELDS BRUCKHAUS
DERINGER US LLP

Eric B. Bruce
Jennifer B. Loeb
Altin H. Sila
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4577
Eric.Bruce@freshfields.com
Jennifer.Loeb@freshfields.com
Altin.Sila@freshfields.com

KOBRE & KIM LLP

Matthew I. Menchel
Amanda N. Tuminelli
800 Third Avenue
6th Floor
New York, NY 10022
Telephone:  (212) 488-1200
matthew.menchel@kobrekim.com
Amanda.tuminelli@kobrekim.com

*Attorneys for Parker H. Petit*

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

William Weinreb
Michael Packard
111 Huntington Ave., Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
billweinreb@quinnemanuel.com
michaelpackard@quinnemanuel.com

William Burck
Daniel Koffmann
51 Madison Avenue, 22nd Floor
New York, New York
Tel: (212) 849-7000
Fax: (212) 849-7100
williamburck@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for William Taylor*

## TABLE OF CONTENTS

**Page**

I.   THE GOVERNMENT SHOULD NOT BE PERMITTED TO PRESENT EVIDENCE CONCERNING A THREE-DECADES-OLD NO-ADMIT-NO-DENY SEC SETTLEMENT WITH A COMPANY MR. PETIT FOUNDED..................1

   A.   Evidence Of A Three-Decades-Old Allegation Against A Different Company Is Not Direct Evidence Of The Charged Offense...................................2

   B.   The Evidence Is Not Admissible Under Rule 404(b) Because It Is Not Relevant To Mr. Petit's Knowledge, Intent, Or Absence Of Mistake, And Because It Would Be Unfairly Prejudicial, Confusing, A Waste Of Time, And Cumulative. ......................................................................................3

   C.   If The Court Does Admit The Evidence, It Should Give A Limiting Instruction As To Mr. Taylor. ...................................................................9

II.  MR. PETIT AND MR. TAYLOR SHOULD BE ABLE TO PRESENT EVIDENCE THAT THE SALES TACTICS THE GOVERNMENT ALLEGES WERE FRAUDULENT WERE PRACTICED OPENLY AND ROUTINELY WITHIN THE COMPANY AND WERE WELL-KNOWN TO MIMEDX'S ACCOUNTANTS. .....................................................................................10

III. THE COURT SHOULD ADMIT EVIDENCE OF SUBSEQUENT PAYMENTS BY THE FOUR DISTRIBUTORS AT ISSUE IN THE INDICTMENT BECAUSE IT SHOWS THAT MR. PETIT AND MR. TAYLOR REASONABLY AND GENUINELY BELIEVED MIMEDX WOULD RECEIVE TIMELY PAYMENT. ..........................................................................................14

IV.  MR. PETIT AND MR. TAYLOR ARE NOT ADVANCING DEFENSES OF RELIANCE ON LEGAL OR ACCOUNTING ADVICE AND SHOULD NOT BE REQUIRED TO PREVIEW THEIR EVIDENCE OF GOOD FAITH. ............................17

V.   THE GOVERNMENT'S MOTION TO PRECLUDE EXAMINATION OF ITS WITNESSES ABOUT THEIR DISHONEST ACTS IS PREMATURE AND MERITLESS....................................................................................................21

VI.  THE GOVERNMENT'S MOTION TO PRECLUDE BACKGROUND ON MR. PETIT, MR. TAYLOR, AND MIMEDX IS FRIVOLOUS. .............................................22

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ansell v. Green Acres Contracting Co.*,
   347 F.3d 515, 521 (3d Cir. 2003)........................................................................... 12

*Huddleston v. United States*,
   485 U.S. 681, 689 (1988)........................................................................................ 4

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549, 566 (S.D.N.Y. 2004)........................................................... 11

*Levine v. SEC*,
   436 F.2d 88, 91–92 (2d Cir. 1971)............................................................. 12, 13, 20

*Old Chief v. United States*,
   519 U.S. 172, 189 (1997)....................................................................................... 25

*SEC v. Am. Growth Funding II, LLC*,
   No. 16 Civ. 828(KMW), 2018 WL 6322145, at *3 (S.D.N.Y. Dec. 4, 2018)....... 20

*SEC v. Citigroup Glob. Markets Inc.*,
   827 F. Supp. 2d 328, 333 (S.D.N.Y. 2011)............................................................. 5

*SEC v. Espuelas*,
   698 F. Supp. 2d 415, 430 (S.D.N.Y. 2010)........................................................... 11

*SEC v. Lek Securities Corp.*,
   No. 17 Civ. 1789 (DLC), 2019 WL 5703944, at *1 (S.D.N.Y. Nov. 5, 2019)...... 20

*SEC v. Tourre*,
   950 F. Supp. 2d 666, 984 (S.D.N.Y. 2013)........................................................... 20

*SEC v. Treadway*,
   438 F. Supp. 2d 218, 221 (S.D.N.Y. 2006)........................................................... 22

*Shalala v. Guernsey Mem'l Hosp.*,
   514 U.S. 87, 101 (1995)........................................................................................... 4

*United States v. Aboumoussallem*,
   726 F.2d 906, 911 (2d Cir. 1984)........................................................................... 11

*United States v. Atias*,
   No. 14 Cr. 403 (DRH), 2017 WL 6459477, at *18 (E.D.N.Y. Dec. 18, 2017)..... 17

*United States v. Bailey*,
   696 F.3d 794, 801–02 (9th Cir. 2012) ..................................................................... 5

*United States v. Blackwell*,
   853 F.2d 86, 88 (2d Cir. 1988)............................................................................... 23

*United States v. Cleary*,
    565 F.2d 43, 47 (2d Cir. 1977).................................................................................. 16

*United States v. Coyle*,
    No. S1 93 Cr. 68 (SS), 1993 WL 378332, at *9 n.8 (S.D.N.Y. Sept. 17, 1993)...................... 11

*United States v. DiCarlo*,
    131 F. Supp. 2d 537, 539 (S.D.N.Y. 2001).................................................................... 8

*United States v. Fiumano*,
    No. S3 14 Cr. 518 (JFK), 2016 WL 1629356, at *7 (S.D.N.Y. Apr. 25, 2016) ..................... 13

*United States v. Garcia*,
    291 F.3d 127, 138 (2d Cir. 2002)............................................................................... 4

*United States v. Gilan*,
    967 F.2d 776, 780 (2d Cir. 1992)............................................................................... 9

*United States v. Gonzalez*,
    No. 08 Cr. 363 (BSJ), 2009 WL 1834317, at *2 (S.D.N.Y. June 24, 2009)........................... 4

*United States v. Gordon*,
    987 F.2d 902, 909 (2d Cir. 1993)............................................................................ 4, 7

*United States v. Gorski*,
    36 F. Supp. 3d 256, 268 (D. Mass. 2014) ................................................................... 17

*United States v. Goyal*,
    629 F.3d 912, 919 (9th Cir. 2010) ............................................................................ 11

*United States v. Graham*,
    No. 16 Cr. 786 (NSR), 2019 WL 2366724, at *3 (S.D.N.Y. May 31, 2019) ........................ 17

*United States v. Hall*,
    202 F.3d 270, 2000 WL 32010, at *4 (6th Cir. 2000) ........................................................ 12

*United States v. Han*,
    230 F.3d 560, 564 (2d Cir. 2000)............................................................................... 24

*United States v. Hsu*,
    669 F.3d 112, 118 (2d Cir. 2012)............................................................................... 24

*United States v. Inniss*,
    No. 18 Cr. 134 (KAM), 2019 WL 6999912, at *8–9 (E.D.N.Y. Dec. 20, 2019) ................... 23

*United States v. Johnson*,
    No. S5 16 Cr. 281 (PGG), 2019 WL 690338, at *3 (S.D.N.Y. Feb. 16, 2019) ........................ 2

*United States v. Kassir*,
    No. 04 Cr. 356 (JFK), 2009 WL 976821, at *2 (S.D.N.Y. Apr. 9, 2009) .......................... 2, 3

*United States v. Klein*,
    No. 16 Cr. 442 (JMA), 2017 WL 1316999, at *8 (E.D.N.Y. Feb. 10, 2017) ........................... 7

*United States v. Kosinski*,
    No. 16 Cr. 148 (VLB), 2017 WL 4953902, at *4–6 (D. Conn. Oct. 31, 2017)................ 23, 24

*United States v. Lauersen*,
No. S2 98 Cr. 1134 (WHP), 2000 WL 1677931, at *6 (S.D.N.Y. Nov. 8, 2000) .................. 9

*United States v. Litvak*,
808 F.3d 160, 189–90 (2d Cir. 2015)............................................................................... 11, 12

*United States v. Lopez*,
No. 09 Cr. 331 (RJA), 2017 WL 6554955, at *6 (W.D.N.Y. Dec. 22, 2017) ...................... 23

*United States v. Lumiere*,
249 F. Supp. 3d 748, 760 (S.D.N.Y. 2017)............................................................................. 3

*United States v. Martoma*,
No. 12 Cr. 973 (PGG), 2014 WL 31191, at *2–5 (S.D.N.Y. Jan. 6, 2014).............. 2, 3, 4, 5, 8

*United States v. McCallum*,
584 F.3d 471, 477 (2d Cir. 2009)............................................................................................ 3

*United States v. Meredith*,
No. 12 Cr. 143-S, 2014 WL 897373, at *1 (W.D. Ky. Mar. 6, 2014) .............................. 19, 20

*United States v. Morrison*,
No. S2 04 Cr. 699 (DRH), 2007 WL 1100447, at *3 (E.D.N.Y. Apr. 5, 2007) ................... 4, 5

*United States v. Nachamie*,
101 F. Supp. 2d 134, 144–46 (S.D.N.Y. 2000)........................................................................ 5

*United States v. Okun*,
No. 08 Cr. 132, 2009 WL 414009, at *6–8 (E.D. Va. Feb. 18, 2009)................................ 18, 21

*United States v. Paredes*,
176 F. Supp. 2d 172, 177 (S.D.N.Y. 2001)........................................................................... 22

*United States v. Rahman*,
189 F.3d 88, 135 (2d Cir. 1999)........................................................................................... 19

*United States v. Ramirez*,
894 F.2d 565, 570 (2d Cir. 1990)............................................................................................ 9

*United States v. Rossomando*,
144 F.3d 197, 202 (2d Cir. 1998)......................................................................................... 16

*United States v. Scarpa*,
897 F.2d 63, 70 (2d Cir. 1990)............................................................................................. 13

*United States v. Scully*,
877 F.3d 464, 476 (2d Cir. 2017)......................................................................................... 19

*United States v. Ulbricht*,
79 F. Supp. 3d 466, 492 (S.D.N.Y. 2015)............................................................................... 8

*United States v. Walker*,
191 F.3d 326, 336 (2d Cir. 1999)......................................................................................... 13

*United States v. Wilkerson*,
388 F. Supp. 3d 969, 972 (E.D. Tenn. 2019)........................................................................ 19

## **Rules and Regulations**

Fed. R. Crim. P. 12.1 ........................................................................................................ 20

Fed. R. Evid. 401 ........................................................................................................ 23

Fed. R. Evid. 404(b) ........................................................................................................ 10

Defendants Parker H. Petit and William Taylor respectfully submit this memorandum of law in opposition to the government's motions *in limine*:  (1) to admit prior act evidence to establish Mr. Petit's knowledge of accounting/revenue recognition rules and intent as to the crimes charged in the Indictment; (2) to preclude what the government describes as "good acts" evidence; (3) to preclude conduct after the alleged conspiracy that the government argues is irrelevant; (4) to require the defendants to make a factual proffer to support any presence of counsel defense; (5) to preclude argument or questioning regarding accounting advice that the defendants received, absent a proffered basis; (6) to limit cross-examination of certain witnesses regarding bias and prior bad acts, Dkt. No. 72, and (8) to exclude background evidence regarding Mr. Petit, Mr. Taylor, and MiMedx, Dkt. No. 79.

## ARGUMENT

**I.    THE GOVERNMENT SHOULD NOT BE PERMITTED TO PRESENT EVIDENCE CONCERNING A THREE-DECADES-OLD NO-ADMIT-NO-DENY SEC SETTLEMENT WITH A COMPANY MR. PETIT FOUNDED.**

The government's request that the Court admit evidence related to Healthdyne is nothing more than a disguised effort to inject stale propensity evidence into this complex trial and thereby prejudice the jury against Mr. Petit.  In the 1980s, Mr. Petit founded and served as Healthdyne's CEO after inventing the first home monitor for Sudden Infant Death Syndrome.  The SEC began investigating Healthdyne's revenue projections and booking of certain transactions *35 years ago*—when, for context, Mr. Petit's codefendant, Mr. Taylor, was still in *high school*.  *See* Dkt. No. 72 at 4.  Evidence of the Healthdyne allegations, which were settled on a no-admit-no-deny basis, is irrelevant and inadmissible.

1

**A.      Evidence Of A Three-Decades-Old Allegation Against A Different Company Is Not Direct Evidence Of The Charged Offense.**

Against all reason, the government somehow contends that an SEC investigation *in the mid-1980s* is "direct evidence" of an alleged conspiracy *in 2015*. *See id.* at 5.  This is absurd. "Courts in this District employ a narrow construction in determining whether uncharged crimes are direct evidence of charged offenses."  *United States v. Johnson*, No. S5 16 Cr. 281 (PGG), 2019 WL 690338, at *3 (S.D.N.Y. Feb. 16, 2019).[1]  Evidence does not meet this standard simply because it "provides context or is relevant to the charged conduct."  *United States v. Kassir*, No. 04 Cr. 356 (JFK), 2009 WL 976821, at *2 (S.D.N.Y. Apr. 9, 2009).  Moreover, unless it is "manifestly clear that the evidence in question" is direct evidence, "the proper course is to proceed under Rule 404(b)."  *United States v. Martoma*, No. 12 Cr. 973 (PGG), 2014 WL 31191, at *2 (S.D.N.Y. Jan. 6, 2014); *accord Kassir*, 2009 WL 976821, at *2 ("[N]umerous courts in this circuit that found it necessary to conduct Rule 404(b) analysis of uncharged criminal activity that merely provided context or was somehow relevant to the charged conduct.").

The government's sole argument is that the Healthdyne allegations somehow "explain[] [Mr. Petit's] 'understanding and intent'" and "show[] that [his] actions were not accidental."  Dkt. No. 72 at 8.  But these are simply the permissible uses listed in Rule 404(b)(2), not bases for admission as direct evidence.

The government never explains how the Healthdyne evidence fits into any of the discrete categories of direct evidence of uncharged acts and therefore has forfeited any argument that it does.  Nor is evidence of a three-decades-old, no-admit-no-deny settlement with the SEC involving

---

[1]    Unless otherwise noted, we have omitted internal citations, quotation marks, and alterations from citations in this brief.  We have also shrunk lengthy website names using bit.ly's URL shortener.

a company affiliated with one of the two defendants part of the same series of transactions as, inextricably intertwined with, or necessary to complete the story of the charged offense. *Cf., e.g.*, *Martoma*, 2014 WL 31191, at *2 (evidence that defendant received tips related to pharmaceuticals not at issue was not direct evidence); *Kassir*, 2009 WL 976821, at *2 (defendant's attendance at jihad training camps in other countries not direct evidence in prosecution for hosting terrorist websites and attempting to establish jihad training camp in United States).  "Indeed, the Indictment itself refutes the Government's . . . claims, as it tells a compelling, complete, and detailed story with . . . no mention of" Healthdyne.  *Martoma*, 2014 WL 31191, at *3.  The government therefore has no colorable basis to argue that the Healthdyne allegations are direct evidence in this case.

**B.    The Evidence Is Not Admissible Under Rule 404(b) Because It Is Not Relevant To Mr. Petit's Knowledge, Intent, Or Absence Of Mistake, And Because It Would Be Unfairly Prejudicial, Confusing, A Waste Of Time, And Cumulative.**

The Government fares no better under Rule 404(b) because it is clear that what it intends to offer is nothing more than "propensity evidence in sheep's clothing."  *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009).  Rule 404(b) "does not invite the government to offer, carte blanche, any prior act of the defendant in the same category of [alleged] crime."  *Id.* at 475.  Rather, "[pr]ior bad-acts evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial."  *United States v. Lumiere*, 249 F. Supp. 3d 748, 760 (S.D.N.Y. 2017).  The Healthdyne allegations fail on all fronts.

*First*, the only purpose of introducing the Healthdyne allegations would be to demonstrate Mr. Petit's supposed propensity for the alleged crimes.  The government contends that Healthdyne sheds light on "whether Petit knew and understood the accounting implications of his actions."  Dkt. No. 72 at 10.  The notion that unproven allegations from more than three decades ago are probative of whether Mr. Petit believed in 2015 that MiMedx's accountants and auditors knew

what they needed to know is beyond far-fetched.  Courts routinely conclude that periods far shorter than 37 years are too long for a juror to draw a permissible inference.  *See, e.g.*, *United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002) (vacating convictions where district court admitted uncharged conduct occurring 12 years before charged conduct); *United States v. Gonzalez*, No. 08 Cr. 363 (BSJ), 2009 WL 1834317, at *2 (S.D.N.Y. June 24, 2009) (excluding uncharged conduct from 13 to 18 years before charged conduct); *United States v. Morrison*, No. S2 04 Cr. 699 (DRH), 2007 WL 1100447, at *3 (E.D.N.Y. Apr. 5, 2007) (excluding uncharged conduct from less than 20 years before charged conduct).  Nor does the fact that the Healthdyne allegations concerned similar broad categories of accounting issues suffice to justify admission under Rule 404(b).  *Cf. United States v. Gordon*, 987 F.2d 902, 909 (2d Cir. 1993) (vacating conviction because even though defendant's arrest less than two years earlier involved same drug, that evidence "had so little value to prove his knowledge" where it did not involve the same coconspirator or quantities).  And given that "GAAP changes and, even at any one point, is often indeterminate," *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 101 (1995), no rational juror could conclude anything except that Mr. Petit was CEO of a company accused of accounting misconduct once before, so he probably engaged in accounting misconduct here.  The government may not "parade past the jury . . . potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo."  *Huddleston v. United States*, 485 U.S. 681, 689 (1988).

*Second*, the Healthdyne allegations are irrelevant to the government's proffered purposes. *See Martoma*, 2014 WL 31191, at *4 (even assuming the government could show a proper purpose, "the court must [still determine] whether the proffered evidence is relevant to that proper purpose").  But all the government has offered are "allegation[s] that [were] neither admitted nor denied," which "ha[ve] no evidentiary value" and "can not be used as evidence in subsequent

4

litigation." *SEC v. Citigroup Glob. Markets Inc.*, 827 F. Supp. 2d 328, 333 (S.D.N.Y. 2011), *vacated and remanded on other grounds*, 752 F.3d 285 (2d Cir. 2014).  Since the SEC settled with Healthdyne without requiring an admission of wrongdoing, "there is no evidence that the [Healthdyne] transactions were fraudulent or illegal," let alone criminal, and they are not relevant to Mr. Petit's state of mind.  *Martoma*, 2014 WL 31191, at *4 (evidence of other inside information not relevant to knowledge, intent, or lack of mistake where they were "concededly not material[,] . . . not non-public," and "never traded on"); *Morrison*, 2007 WL 1100447, at *3 (evidence of negligent homicide not relevant to intentional killing because of "[t]he disparate states of mind").

The government insists that it intends to use the Healthdyne evidence only to show Mr. Petit's knowledge of revenue recognition rules.  The Ninth Circuit had the opportunity to consider a similar scenario and rejected the argument that, despite the risk of prejudice, the government should be allowed to use a past civil complaint to show that a defendant had knowledge of the law:

> There is some logic to the argument that evidence that Bailey had previously been accused of violating Rule S–8 shows that he was on notice of the type of prohibited conduct.  But this is not enough. . . . [A] complaint would not establish knowledge even if the prosecution had purported to use it only for that reason.  All a complaint establishes is knowledge of what a plaintiff claims.  It does not establish the truth of either the facts asserted in the complaint, or of the law asserted in the complaint.  **Since the previous complaint was never proved, nor was the truth of any of it conceded, it could not have established knowledge of the law**.

*United States v. Bailey*, 696 F.3d 794, 801–02 (9th Cir. 2012) (emphasis added); *see also United States v. Nachamie*, 101 F. Supp. 2d 134, 144–46 (S.D.N.Y. 2000) (defendant's 20-year-old conviction for conspiracy to commit healthcare fraud not admissible to demonstrate knowledge of Medicare fraud conspiracy because standard rule that prosecution may prove its case using the

evidence it chooses "must give way" when "the Government seeks to prove its case by using highly prejudicial evidence that is cumulative of other available evidence.").

Even if it were appropriate to use past allegations to show Mr. Petit's knowledge of the law, none of the Healthdyne documents the government intends to use reveals Mr. Petit's knowledge of the revenue recognition rules the government alleges were violated at MiMedx. The Wells Notice (produced in September 2020, nine months after the Court's discovery deadline) contains no substantive information about the SEC's allegations. The Wells Submission (also produced in September 2020, nine months after the Court's discovery deadline) was prepared by counsel on behalf of multiple parties, including Healthdyne and Terry Dewberry (CFO of Healthdyne at the time), and does not contain any reference to Mr. Petit's knowledge or understanding of revenue recognition rules. When he was deposed in the Healthdyne matter, the SEC did not ask Mr. Petit questions about his understanding of specific accounting rules, and Mr. Petit did not testify regarding specific revenue recognition rules or his ability to apply revenue recognition rules to a particular set of facts. In fact, Mr. Petit twice declined to answer questions because he lacked the necessary accounting knowledge to do so.[2] Finally, when Mr. Petit was deposed in the SEC investigation concerning MiMedx, he testified that he had no recollection of the specific allegations in the Healthdyne matter from over 30 years ago. Petit Dep. Tr. at 32–33, *SEC v. MiMedx Group Inc., Parker H. Petit, et al.*, No. 19 Civ. 10927 (S.D.N.Y. 2019). For all

---

[2] Asked to explain what "adjust inventory costs to normal" means, Mr. Petit answered "If I tried to explain it, I would get caught in some very complex accounting transactions that I probably don't have the expertise—the specific expertise—to give many details." Petit Healthdyne Dep. Tr. at 220. Asked another accounting question, Mr. Petit responded, "Well, without having sufficient time to sit back and think about what level of expertise I have and gap in some of the accounting rules, I would just be getting myself into a discussion that maybe after a long period of time, I might get around to recalling, but I really shouldn't because I don't—I don't recall the specifics right now and there's a lot of very technical items here accounting-wise." Petit Healthdyne Dep. Tr. at 221–22.

these reasons, the government should not be permitted to introduce the Healthdyne evidence to show Mr. Petit's knowledge of the law.

The government also represented that it will use the Healthdyne evidence to show that Mr. Petit was aware of regulatory scrutiny of revenue recognition, but awareness of regulatory scrutiny of accounting and revenue recognition issues is not an element of any charged offense in this matter. Nor is it an issue in this case—Mr. Petit has not and will not claim at trial that he was unaware that the SEC generally scrutinizes accounting and revenue recognition issues. In any event, the government has disclosed that it intends to introduce Mr. Petit's awareness in 2015 of regulatory scrutiny into the revenue recognition practices of one of its competitors, a company called Osiris Therapeutics, Inc. The government's pre-trial disclosures suggest that it intends to introduce numerous exhibits and testimony from several witnesses regarding the Osiris investigation. Thus, further evidence concerning a three-decades-old investigation of Healthdyne that resulted in a "no admit, no deny" settlement is also unnecessarily cumulative.

*Third*, given that the Healthdyne allegations have little, if any, probative value, they should be excluded as unfairly prejudicial, confusing, and a waste of time. As explained in Mr. Taylor's motion *in limine* #7: to exclude evidence of civil litigation, courts routinely exclude evidence of other litigation under Rule 403. *See* Dkt. No. 66 at 2–3. Given the staleness and irrelevance of the Healthdyne allegations, their only purpose would be to bolster the government's allegations in this case to persuade the jury that Mr. Petit is supposedly a repeat offender. *Cf., e.g.*, *Gordon*, 987 F.3d at 909 (admission of evidence that defendant possessed same drug less than two years earlier but under different circumstances was so unfairly prejudicial as to warrant vacatur of conviction); *United States v. Klein*, No. 16 Cr. 442 (JMA), 2017 WL 1316999, at *8 (E.D.N.Y. Feb. 10, 2017) ("[T]he only purpose to be served by the admission of the SEC complaint and

charging decision would be to suggest to the jury that it should reach the same conclusion that the SEC reached . . . .").

The Healthdyne allegations also would confuse the jury and needlessly waste time. The legality of Healthdyne's representations to its shareholders over three decades before the charged conduct is not in issue and would only distract the jury from its core task of determining whether the government has proved the conduct alleged beyond a reasonable doubt. *Cf., e.g.*, *United States v. DiCarlo*, 131 F. Supp. 2d 537, 539 (S.D.N.Y. 2001) (excluding various uncharged conspiratorial agreements because "the introduction of proof of such broad, vague, and ephemeral matters in this already complex but reasonably focused case would so hopelessly confuse the jury as to substantially outweigh, both in terms of unfair prejudice and of confusion, any possible probative value"). In addition, granting the government's motion would protract what is already likely to be a lengthy trial by compelling Mr. Petit to rebut the allegations that Healthdyne did anything unlawful or that he understands the relevant accounting principles as well as the government claims. *Cf. Martoma*, 2014 WL 31191, at *5 (excluding evidence of other tips in part because the court "would be required to permit the Defendant to introduce [rebuttal] evidence" to "defend the legitimacy of these other transactions"); *United States v. Ulbricht*, 79 F. Supp. 3d 466, 492 (S.D.N.Y. 2015) (excluding evidence of uncharged contraband because it could mislead the jury into convicting defendant for uncharged conduct and risked spawning a mini-trial on collateral issues).

*Finally*, Mr. Petit would be further prejudiced by admission of this evidence because he does not have access to the documents needed to defend against the government's assertions about the Healthdyne matter. The government failed to produce basic documents from the Healthdyne matter, such as the SEC's Complaint against Healthdyne; the "no admit, no deny" settlement

entered between the SEC and Healthdyne (but not Mr. Petit personally); and the injunction entered

against Healthdyne.  Because the matter was resolved in 1987, these documents are not available

online, and counsel for Mr. Petit understands that the archives of the U.S. District Court for the

Northern District of Georgia are closed due to the ongoing COVID-19 pandemic, leaving counsel

with no means of obtaining these critical documents.  On October 13, 2020, 10 months after the

discovery deadline set by the Court and just 13 days before the start of trial, the government

produced an additional 4,000 pages of Healthdyne evidence.  Although counsel has not yet

reviewed that entire 4,000 page production, it does not appear to contain any of these essential

documents.

The Healthdyne allegations are not proper 404(b) evidence.  The Court should exclude

them.

### C.   If The Court Does Admit The Evidence, It Should Give A Limiting Instruction As To Mr. Taylor.

The Healthdyne allegations have nothing to do with Bill Taylor.  He never worked at

Healthdyne, and he was in high school during the SEC investigation and settlement referenced in

the 404(b) notice.  "Where, as here, more than one defendant is joined for trial, the admission of

Rule 404(b) evidence against one defendant presents the inevitable risk of 'spillover,' or unfair

prejudice, to the co-defendant."  *United States v. Lauersen*, No. S2 98 Cr. 1134 (WHP), 2000 WL

1677931, at *6 (S.D.N.Y. Nov. 8, 2000).  Thus, "the district court must, if requested, provide a

limiting instruction for the jury."  *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992); *see

also United States v. Ramirez*, 894 F.2d 565, 570 (2d Cir. 1990) (no error in admitting other-acts

evidence involving only one defendant where the district court was "clear in cautioning the jury

that the evidence was allowed against [one defendant] only").  Accordingly, if the Court admits

the Healthdyne allegations, Mr. Taylor respectfully requests that the Court caution the jury that these allegations are not to be considered in any way in their deliberations as to Mr. Taylor.

## II.    MR. PETIT AND MR. TAYLOR SHOULD BE ABLE TO PRESENT EVIDENCE THAT THE SALES TACTICS THE GOVERNMENT ALLEGES WERE FRAUDULENT WERE PRACTICED OPENLY AND ROUTINELY WITHIN THE COMPANY AND WERE WELL-KNOWN TO MIMEDX'S ACCOUNTANTS.

Many of the business practices the Indictment characterizes as fraudulent were practiced openly and routinely at MiMedx with other customers, which is probative evidence that Mr. Petit and Mr. Taylor believed in good faith that the practices were not improper.  The government seeks to exclude this evidence by characterizing it as "prior good acts" that will be offered to prove Mr. Petit's and Mr. Taylor's good character.  That is incorrect.  It will be offered as evidence of Mr. Petit's and Mr. Taylor's lack of fraudulent intent, which is a central issue in the case and an issue on which "prior acts" evidence may be admitted under Fed. R. Evid. 404(b).

The government's motion is premised on the untenable position that the jury should hear only about the five transactions described in the Indictment, as if the hundreds of thousands of other transactions conducted under Mr. Petit's and Mr. Taylor's leadership—many of which involved the same challenged practices—had no effect on their state of mind.  The evidence will show that the conduct the government claims was part of Mr. Petit's and Mr. Taylor's alleged fraud was practiced openly and routinely at the company and was well-known to MiMedx's accountants.  The jury is entitled to infer from the openness and transparency of the conduct that Mr. Petit and Mr. Taylor did not have fraudulent intent when they engaged in similar conduct regarding the handful of transactions at issue in the Indictment.

Evidence of MiMedx's similar, uncharged dealings with other customers is highly probative of Mr. Petit's and Mr. Taylor's lack of knowledge or intent and should not be excluded under Rule 404(b) and Rule 403.  "[T]he standard of admissibility when a criminal defendant

offers similar acts evidence as a shield [is] not . . . as restrictive as when a prosecutor uses such evidence as a sword." *United States v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984); *accord United States v. Coyle*, No. S1 93 Cr. 68 (SS), 1993 WL 378332, at *9 n.8 (S.D.N.Y. Sept. 17, 1993) (Sotomayor, J.).  In a similar vein, the Second Circuit repeatedly has admonished that "no events or actions which bear *even remotely* on [the] probability [of good faith] should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence *clearly* outweigh its relevance."  *United States v. Litvak*, 808 F.3d 160, 190 (2d Cir. 2015) (emphases added) (collecting cases).

Evidence related to MiMedx's practices with respect to other customers is both relevant and offered for a proper purpose because it undercuts the government's allegations of criminal intent and supports a defense of good faith.  There is nothing unlawful or improper about the sales techniques alleged in the indictment, including offering incentives or flexibility to important customers to land sales and meet revenue targets.  *See, e.g.*, *United States v. Goyal*, 629 F.3d 912, 919 (9th Cir. 2010) ("[Defendant's] desire to meet . . . revenue targets, and his knowledge of and participation in deals to help make that happen, is simply evidence of [him] doing his job diligently.");  *SEC v. Espuelas*, 698 F. Supp. 2d 415, 430 (S.D.N.Y. 2010) ("Searching for ways to meet revenue targets, however, contributes little to a strong inference of fraud because such actions are common practice.");  *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 566 (S.D.N.Y. 2004) ("Offering incentives to meet sales or earnings goals is a common practice, and, without additional allegations not present here, the allegation that the sales at issue were made pursuant to incentives to meet goals set by management is an insufficient basis on which to infer conscious misbehavior . . . .").  Instead, the government's claim is that Mr. Petit and Mr. Taylor willfully concealed these sales practices from MiMedx's accountants, auditors, and investors.

11

But the evidence at trial will show that these sales practices were common and widely known at MiMedx.  The evidence will show that MiMedx offered similar incentives to other customers and worked constructively with its partners, including by exchanging slow-moving product for something more in demand.  The jury is entitled to infer from how open and widespread this conduct was that neither Mr. Petit nor Mr. Taylor believed there was anything wrong with it or that it had any impact on revenue recognition.  And the jury is entitled to infer that Mr. Petit and Mr. Taylor reasonably and honestly believed that acting in a similar manner with the four distributors regarding the handful of sales at issue in the Indictment had no accounting significance and did not require a special disclosure.  Courts routinely admit this kind of evidence under Rule 404(b).  *See, e.g.*, *Litvak*, 808 F.3d at 189–90 ("[E]vidence that, during the relevant time period supervisors . . . —including [defendant's] supervisors—regularly approved of conduct identical to that with which [defendant] was charged" was relevant to good faith, and "the District Court exceeded its allowable discretion" in excluding it); *United States v. Hall*, 202 F.3d 270, 2000 WL 32010, at *4 (6th Cir. 2000) (per curiam) (unpublished table disposition) ("Where the defendant admits the act but denies intent, Rule 404 does not exclude specific instances to prove *or disprove* intent . . . ." (emphasis added)); *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 521 (3d Cir. 2003) (in age-discrimination lawsuit, evidence of treatment of other employees over 40 was admissible "for the proper purpose of establishing *or negating* discriminatory intent" (emphasis added)).  Accordingly, evidence of similar transactions with other customers is relevant and offered for a proper purpose because it bears on Mr. Petit's and Mr. Taylor's intent.

The decisions on which the government relies are inapposite.  *Levine v. SEC*, 436 F.2d 88, 91–92 (2d Cir. 1971), is especially off-base.  In that case, an SEC administrative law judge *admitted* testimony from four customers who had not been defrauded, and the Second Circuit held

only that it was not error to exclude testimony from *other* such customers.  *Id.*  The other decisions dealt with defendants who offered evidence of irrelevant conduct that was dissimilar and entirely separate from the charged conduct.  *See, e.g.*, *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming exclusion of evidence that other asylum applications defendant prepared "contained non-boilerplate, honest accounts of persecution," unlike charged applications); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (affirming order denying motion to compel production of recordings of non-drug-related conversations).  Taken together, these decisions stand for the unremarkable proposition that a "defendant charged with robbing a bank in Manhattan on April 22 cannot offer as evidence to disprove the charged crime . . . that he did not rob the Manhattan branch on April 20, 21, 23, and 24."  *United States v. Fiumano*, No. S3 14 Cr. 518 (JFK), 2016 WL 1629356, at *7 (S.D.N.Y. Apr. 25, 2016).

By contrast, the evidence here will show that MiMedx routinely offered *the same or similar* incentives and offers of flexibility to other customers, and that there was therefore no reason to believe that these practices had any accounting significance for the four distributors at issue in the Indictment or any other MiMedx customer.  Unlike robbing banks and dealing drugs, the open and transparent manner in which Mr. Petit and Mr. Taylor engaged in lawful business practices that the government now alleges were part of a fraudulent scheme bears directly on their state of mind, good faith, and lack of scienter.

The government's parade of horribles if this evidence comes in is unpersuasive and, in any event, outweighed by the probative value of the evidence.  The risks of delay and juror confusion are minimal.  Mr. Petit and Mr. Taylor do not intend to make this case about other customers and distributors—only to show how their experiences with other customers and distributors informed their mental states.  Defense counsel intends to ask high-level questions about whether MiMedx

13

engaged in similar practices with other customers, not to undertake a full accounting of those customer relationships. Similarly, the government's protests of jury confusion strain credulity. Despite the complexity of this trial, there is little risk that the jury will not be able to differentiate the *four* distributors alleged in the Indictment or grasp the basic concept that MiMedx routinely used similar sales techniques during the time period of the Indictment.

Nor does the defense's decision to call Scott Taub as a witness somehow open the door to evidence relating to AvKARE. Mr. Petit and Mr. Taylor do not intend to call Mr. Taub to testify about MiMedx's dealings with AvKARE or any other distributor. Instead, the purpose of calling Mr. Taub is to elicit testimony regarding Mr. Petit's, Mr. Taylor's, and other MiMedx employees' understandings of the relevant revenue recognition requirements when he began consulting for MiMedx in 2017. That evidence goes only the state of Mr. Petit's and Mr. Taylor's knowledge of the relevant accounting rules. It does not involve AvKARE. Nor does presenting such evidence somehow open the door to the government staging an elaborate sideshow regarding what was by far MiMedx's largest distributor—one that all parties agree should not be an issue during this trial.

The Court should deny the government's second motion *in limine* to the extent it seeks to exclude evidence relating to incentives and flexibility with customers aside from the four distributors identified in the Indictment and grant it to the extent it seeks to exclude evidence related to AvKARE.

### III. THE COURT SHOULD ADMIT EVIDENCE OF SUBSEQUENT PAYMENTS BY THE FOUR DISTRIBUTORS AT ISSUE IN THE INDICTMENT BECAUSE IT SHOWS THAT MR. PETIT AND MR. TAYLOR REASONABLY AND GENUINELY BELIEVED MIMEDX WOULD RECEIVE TIMELY PAYMENT.

The fact that the four distributors at issue in the Indictment paid all or substantially all of what they owed MiMedx is admissible because it is probative of a central issue in this case—the

reasonableness of Mr. Petit's and Mr. Taylor's beliefs that the four distributors would actually pay for the products they purchased from MiMedx.

The gravamen of the government's case is that (1) a handful of sales the company made between June and December 2015 did not satisfy the relevant GAAP and SEC criteria for recognizing revenue, and (2) Mr. Petit and Mr. Taylor wrongfully concealed facts that, if known to auditors, would have resulted in some or all of the revenue from these sales being deferred to later quarters and not included in the financial statements for the periods in which the sales actually occurred. *See* Indictment ¶¶ 19, 60–61. At the time these sales took place in 2015, accountants applied four principles to determine when a company could book revenue based on sales like the ones at issue in this case: whether (1) persuasive evidence of an arrangement exists; (2) delivery has occurred or services have been rendered; (3) the seller's price to the buyer is fixed or determinable; and (4) *collectability of payment is reasonably assured*. Fin. Acct. Standards Bd., 605-10-S99 (emphasis added).

The fact that the four distributors at issue in the Indictment ultimately paid for the majority of the product is probative of Mr. Petit's and Mr. Taylor's good-faith belief at the time of the sale that collectability was reasonably assured. SLR is illustrative. The Indictment alleges that at the time SLR purchased $4.6 million of MiMedx product in September 2015, Mr. Petit and Mr. Taylor lacked a reasonable basis to believe that SLR would pay for it. *See* Indictment ¶ 33. The defense, however, will offer evidence that Mr. Petit and Mr. Taylor in fact *had* a basis for that belief, and it will be up to the jury to determine whether that belief was reasonable. The fact that SLR purchased over $15 million of product between the third quarter of 2015 and the fourth quarter of 2017 (including the $4.6 million it purchased in September 2015) is evidence of the reasonableness of Mr. Petit's and Mr. Taylor's belief and certainly a fact the jury is entitled to know. If the

government wishes to argue to the jury that this fact should be given little or no weight, it is of course entitled to do so.

The evidence will show that MiMedx was comfortable making sales to SLR because it had confidence in the character, professionalism, and creditworthiness of SLR's principals, regardless of the company's liquidity or historical sales.  The fact that this was borne out over time supports an inference that MiMedx had justification to believe at the time that collectability was reasonably assured.  In a similar context, the Second Circuit has explained that "[w]here the question of intent is of supreme importance," then the "proof of actual payment or offer of payment must have some pertinence." *United States v. Cleary*, 565 F.2d 43, 47 (2d Cir. 1977) (reversing conviction of bank employee for false statements and misapplication of bank funds where district court wrongly excluded evidence of whether borrowers made or offered to make payments).  So too here:  Mr. Petit's and Mr. Taylor's good-faith belief that each of the distributors at issue would timely pay for the product they purchased will be a critical issue at trial, and evidence that the distributors ultimately *did* pay is relevant to that issue.

The government's argument that this evidence is inadmissible no-ultimate-harm evidence thus misses the boat.  The Second Circuit has distinguished between the belief that an alleged victim "would not 'ultimately' lose money"—which is not a valid defense—and the belief that "it was *never* going to lose money"—which is.  *See United States v. Rossomando*, 144 F.3d 197, 202 (2d Cir. 1998).  Here, the fact that the distributors named in the Indictment paid for nearly all the product they purchased will not be offered as evidence that everything worked out in the end, but instead that Mr. Petit and Mr. Taylor reasonably and honestly believed that the distributors *would* pay for the product (even if collection ultimately required some flexibility or effort on MiMedx's part).   The ultimate receipt of payment lends credence to Mr. Petit's and Mr. Taylor's

contemporaneous good-faith belief that the revenue numbers MiMedx reported were accurate and negates any intent to defraud MiMedx's investors. *Cf., e.g.*, *United States v. Graham*, No. 16 Cr. 786 (NSR), 2019 WL 2366724, at *3 (S.D.N.Y. May 31, 2019) ("Good faith is a complete defense to a fraud charge."). The government's contrary arguments go only to the weight, not the admissibility, of the evidence.

The Court should deny the government's motion to exclude evidence of subsequent payments by the distributors named in the Indictment.

## IV. MR. PETIT AND MR. TAYLOR ARE NOT ADVANCING DEFENSES OF RELIANCE ON LEGAL OR ACCOUNTING ADVICE AND SHOULD NOT BE REQUIRED TO PREVIEW THEIR EVIDENCE OF GOOD FAITH.

The Court should deny the government's attempt to obtain an extraordinary and unjustified preview of Mr. Petit's and Mr. Taylor's defenses at trial. As the government knows, neither Mr. Petit nor Mr. Taylor is advancing a reliance-on-counsel or reliance-on-accountants defense. Much of the government's argument therefore misses the mark. As Mr. Petit and Mr. Taylor explained to the government, they intend to point to their interactions with counsel and accountants as evidence of their good-faith belief that MiMedx properly reported its revenue and that all material aspects of the transactions at issue had been disclosed. Courts regularly distinguish between evidence of interactions with counsel (or accountants) offered to support a *reliance* defense, which must satisfy certain elements to warrant a jury instruction on it, and evidence offered simply to negate the government's showing of intent to defraud, which need not meet the same elements. *See, e.g.*, *United States v. Atias*, No. 14 Cr. 403 (DRH), 2017 WL 6459477, at *18 (E.D.N.Y. Dec. 18, 2017) (precluding defense counsel from using "the term 'advice of counsel'" but allowing evidence and argument related to interactions with counsel "as bearing on [defendants'] respective states of mind"), *aff'd*, 807 F. App'x 80 (2d Cir. 2020); *United States v. Gorski*, 36 F. Supp. 3d 256, 268 (D. Mass. 2014) (even if interactions with attorneys "would not qualify for an advice-of-

counsel defense in the formal sense; nonetheless, such evidence would surely be admissible on the issue of defendant's state of mind"); *United States v. Okun*, No. 08 Cr. 132, 2009 WL 414009, at *6 (E.D. Va. Feb. 18, 2009) ("If [defendant] is not able to furnish sufficient evidence to warrant an instruction on the good faith reliance on counsel defense, any evidence of attorney advice presented might be relevant to the issue of specific intent.").

The government's professed alarm that Mr. Petit and Mr. Taylor are improperly injecting the presence of counsel and accountants into this trial rings hollow, given that the government itself has put two of MiMedx's former general counsels, its former CFO, its former controller, and two of its outside auditors on its witness list. The government well knows the contours of these witnesses' likely testimony. For example, even before the Indictment was returned, MiMedx's former general counsel, Lexi Haden, told the government that a $200,000 consulting payment to "the Distributor-1 owner," Mark Brooks, was not in fact a "sham" or "inducement to purchase product," as alleged in paragraph 24 of the Indictment, but instead a legitimate payment to settle a legal dispute. Ms. Haden admitted that she should not have included the payment in Mr. Brooks' consulting agreement, said it was "sloppiness" on her part, and blamed it on the fast-moving pace of events. And although the government now asserts that "each of the relevant accounting professionals has denied" telling Mr. Taylor and Mr. Petit that dollar-for-dollar exchanges were revenue neutral, Scott Taub's Jencks Act material indicates that MiMedx viewed such exchanges as revenue neutral as late as 2017, when he was brought in to advise the company on an unrelated matter. Such testimony would not only provide affirmative evidence of good faith, but also help to impeach the testimony of the government's cooperating witnesses who now claim to have advised Mr. Taylor and Mr. Petit otherwise.

The government simply wants to know in advance what specifically Mr. Petit and Mr.

Taylor might argue or elicit through cross-examination of the government's witnesses or in a potential defense case.  It is not entitled to that.  *See United States v. Wilkerson*, 388 F. Supp. 3d 969, 972 (E.D. Tenn. 2019) ("[A] criminal defendant . . . need not do anything at all to defend himself, and certainly he cannot be required to help convict himself.  Rather he has an absolute, unqualified right to compel the State to investigate its own case, find its own witnesses, provide its own facts, and convince the jury through its own resources."); *United States v. Meredith*, No. 12 Cr. 143-S, 2014 WL 897373, at *1 (W.D. Ky. Mar. 6, 2014) ("[Defendant] has not revealed his trial strategy, nor is he required to do so.").  Although the government apparently does not request a "full evidentiary hearing" but instead an undefined "detailed evidentiary proffer," the decisions on which it relies all hold that an evidentiary hearing is appropriate to evaluate potential *affirmative defenses*, such as the defenses of duress or necessity, which are not at issue here.  *See* Dkt. No. 72 at 22–23.  But the Second Circuit has never approved of a pretrial hearing to test a potential defense that is not an affirmative one.  Outside the context of duress, the Second Circuit has approved of this procedure only in extreme scenarios.  *See United States v. Rahman*, 189 F.3d 88, 135 (2d Cir. 1999) (affirming exclusion of justification defense after pretrial hearing established that the defense would be that "the framework of Islamic law" justified conspiracy to commit terrorism).

Even if Mr. Petit and Mr. Taylor intended to offer formal defenses of reliance-on-counsel or -accountants, the law is clear that "the advice-of-counsel defense is not an affirmative defense." *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017).  Instead, a defense of reliance on professional advice "can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an 'unlawful intent.'"  *Id.*  The government has not provided any authority for the proposition that a defendant can be "require[d] . . . to reveal his trial strategy pretrial" simply on the government's say-so.  *See*

*Meredith*, 2014 WL 897373, at \*1 (refusing to order discovery related to potential-advice-of-counsel defense).  Advice-of-counsel is not among the defenses that must be disclosed upon request under the Federal Rules of Criminal Procedure.  *See* Fed. R. Crim. P. 12.1 (alibi), 12.2 (insanity), 12.3 (public-authority).  Nor is wholesale exclusion appropriate even where there is an indication that the evidence may fall short of establishing the defense:  "[C]ourts routinely allow the jury to hear evidence about interactions with and advice of counsel even if ultimately there is insufficient evidence for an advice of counsel instruction."  *E.g.*, *SEC v. Am. Growth Funding II, LLC*, No. 16 Civ. 828 (KMW), 2018 WL 6322145, at \*3 (S.D.N.Y. Dec. 4, 2018).

*SEC v. Stoker*, No. 11 Civ. 7388 (JSR), on which the government relies, hardly supports the government's position.  In *Stoker*, this Court *admitted* evidence regarding counsel's involvement in certain transactions notwithstanding the defendant's representation that he was not asserting an advice-of-counsel defense.  *See* Tr. 906:3–11; 969:2–14, No. 11 Civ. 7388 (JSR) (S.D.N.Y. Aug. 9, 2012) (Dkt. No. 100).  Nor did the SEC, as the government does here, intend to call counsel as a witness.  *Id.* at 900:1–19.

The other decisions on which the government relies are distinguishable.  In *SEC v. Lek Securities Corp.*, No. 17 Civ. 1789 (DLC), 2019 WL 5703944, at \*1 (S.D.N.Y. Nov. 5, 2019), the defendant was trying to rely on advice a *codefendant* received from counsel, which the codefendant refused to produce in discovery on privilege grounds.  The court precluded an advice-of-counsel defense because "legal advice given to another does not establish good faith as a matter of law" and because there had been no waiver of privilege.  *See id.* at \*3–\*4.  In *SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013), the defendant "profess[ed] not to have relied on [counsel's] advice" but nonetheless sought "to present extensive evidence on the presence and involvement of lawyers" as relevant to the "overall context of the transaction."  Here, by contrast,

20

Mr. Petit and Mr. Taylor intend to introduce concrete evidence through *government* witnesses, exhibits, and potential defense witnesses concerning their involvement in the charged transactions to support an inference of good faith.  And in *United States v. Okun*, No. 08 Cr. 132, 2009 WL 414009, at *7–*8 (E.D. Va. Feb. 18, 2009), the court excluded only evidence of advice given after the relevant events.  That is not the case here.  To the extent Mr. Petit or Mr. Taylor introduce evidence from outside the alleged conspiracy, the purpose would be to shed light on their respective intent at the time the alleged crimes took place.

There is no basis for giving the government a preview of Mr. Petit's and Mr. Taylor's trial strategy.  Any objections to the admissibility of specific evidence can be resolved at trial and should not be the subject of a pre-trial order.  The Court should therefore deny the government's request to preclude Mr. Petit and Mr. Taylor from soliciting evidence of their good faith from legal and accounting witnesses without first previewing their trial strategy for the government.

## V.   THE GOVERNMENT'S MOTION TO PRECLUDE EXAMINATION OF ITS WITNESSES ABOUT THEIR DISHONEST ACTS IS PREMATURE AND MERITLESS.

The government broadly seeks to preclude the defense from questioning various witnesses about their past misconduct.  The defense already has agreed not to question these witnesses about the specifics of their drug distribution, solicitation, drunk driving, and other arrests and convictions that the government has disclosed.  Even so, the government's motion should be denied as overbroad and premature.  The Court will be well-positioned to rule on the admissibility of particular lines of cross-examination after the witnesses complete their direct testimony and there is an adequate record on which to make a decision.

For example, the government claims that one witness's "use and social distribution of drugs [has] no bearing on [his] veracity."  Dkt. No. 72, at 31.  Yet the evidence will show that this same witness chose not to disclose his arrest for this conduct to the government, as required by his non-

prosecution agreement, because he thought the government would never find out about it. The government only discovered the arrest when it obtained the witness's rap sheet, and the witness only admitted to the conduct when the government confronted him about it. The witness's violation of his non-prosecution agreement puts him at risk of prosecution for all the conduct he has described to the government, including not only the matters at issue in this case but decades of other drug crimes. This is a permissible topic for cross-examination. *See, e.g.*, *SEC v. Treadway*, 438 F. Supp. 2d 218, 221 (S.D.N.Y. 2006) ("That [the witnesses] were cooperating in the face of serious charges by the SEC and the New York State Attorney General is relevant to whether they may have a bias toward the [SEC] in this case.").

As to the other arrests and misconduct described in the government's motion—including participation in a healthcare fraud and commercial bribery scheme by the same lying, drug-dealing witness discussed above—the Court should defer a ruling until the witnesses testify and there is an adequate record on which to resolve any objections. *See, e.g.*, *United States v. Paredes*, 176 F. Supp. 2d 172, 177 (S.D.N.Y. 2001) ("[T]rial courts often defer regarding motions *in limine* until trial, when the factual record is more fully developed[.]").

## VI.   THE GOVERNMENT'S MOTION TO PRECLUDE BACKGROUND ON MR. PETIT, MR. TAYLOR, AND MIMEDX IS FRIVOLOUS.

The government's final motion *in limine*, filed well after the agreed-upon deadline, *see* Dkt. No. 50 at 2, is a puzzlement. It seeks to preclude seemingly all background evidence regarding Mr. Petit and Mr. Taylor, including an indecipherable catch-all category of "other personal factors," background evidence relating to MiMedx, and evidence relating to potential punishment. *See* Dkt. No. 79 at 1. As to potential punishment, neither Mr. Petit, Mr. Taylor, nor their respective counsel has any intention of violating the well-known prohibition against discussing that issue before the jury. Nor has anyone suggested otherwise. Had the government

expressed any concern about that, defense counsel would have been happy to confirm.

As to the remainder of the motion, it is nothing more than a cynical attempt to sanitize the trial of anything that might give context to Mr. Petit's and Mr. Taylor's lives and actions, that reflects well on them, or that otherwise points to their innocence. The government cannot seriously contend that it is inappropriate for Mr. Petit and Mr. Taylor to discuss their biographies, including any military service, or the products that MiMedx made. All of this is permissible background information that will be necessary for the jury to understand the case and whether Mr. Petit and Mr. Taylor are guilty of the charges. *See, e.g.*, *United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988) (evidence of defendant's education and military service admissible because it "t[ells] the jury something about the defendant as a person[] and his experience in life"); *United States v. Inniss*, No. 18 Cr. 134 (KAM), 2019 WL 6999912, at *8–*9 (E.D.N.Y. Dec. 20, 2019) ("family background, health condition, age, conditions of pretrial release, or any other personal factor unconnected to guilt"); *United States v. Lopez*, No. 09 Cr. 331 (RJA), 2017 WL 6554955, at *6 (W.D.N.Y. Dec. 22, 2017) (employment and education), *aff'd*, 2020 WL 4782375 (2d Cir. Aug. 18, 2020); *United States v. Kosinski*, No. 16 Cr. 148 (VLB), 2017 WL 4953902, at *6 (D. Conn. Oct. 31, 2017) ("Defendant's age, basic information about his employment, and family background"). Such background information "can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding." Fed. R. Evid. 401 advisory committee's note to 1972 proposed rules. The government offers no reason why Mr. Petit and Mr. Taylor, unlike every other criminal defendant, must remain shrouded in mystery.

As to philanthropy specifically, this evidence is admissible both as background evidence and as character evidence. At least one of the government's witnesses, a MiMedx director, met Mr. Petit through his charitable work. Their shared philanthropic pursuits are necessary to

understand their relationship and complete the story of the allegations on trial. *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012) (evidence that "complete[s] the story of the" matters at issue "admissible as direct evidence"). Charitable work is also admissible as evidence of good character. A "lower threshold of relevancy [applies] to character evidence," and "a jury may base an acquittal on character evidence alone." *United States v. Han*, 230 F.3d 560, 564 (2d Cir. 2000); *see, e.g.*, *United States v. Kosinski*, No. 16 Cr. 148 (VLB), 2017 WL 4953902, at *4–*5 (D. Conn. Oct. 31, 2017) (denying government's motion to preclude evidence "regarding the defendant's reputation as a cardiologist who 'saves' people's lives"). The government is seeking to exclude exculpatory evidence simply because it is exculpatory. That is improper.

Evidence regarding MiMedx's products is admissible for similar reasons. In order to understand the charges, Mr. Petit's and Mr. Taylor's roles at the company, and their alleged conduct, the jury must have some context for what kind of company MiMedx is. For example, to evaluate whether Mr. Taylor willfully withheld information from MiMedx's accounting department, the jury must understand his portfolio of responsibility and that he spent far more time focusing on research and development, quality assurance, regulatory affairs, tissue processing, and other medical and operational issues, which are the lifeblood of a cutting-edge biologics company, than he ever did on sales and marketing. The decisions on which the government relies, which deal with excluding irrelevant "good acts" evidence, are inapplicable. *See* Dkt. No. 79 at 2. In addition, the efficacy of those products is directly relevant to Mr. Taylor's and Mr. Petit's good-faith belief that there was significant market demand for MiMedx's comparatively superior product. MiMedx's products are not acts, good or bad. The government has offered no good reason to keep the jury in the dark about what MiMedx actually does. *Cf. Old Chief v. United States*, 519 U.S. 172, 189 (1997) ("[J]urors may well wonder what they are being kept from knowing.").

In any event, the government's motion is premature.  There is no reason for the Court to issue a sweeping, pretrial order excluding all evidence about Mr. Petit's and Mr. Taylor's "personal factors" or MiMedx's products before it has an opportunity to evaluate the evidence Mr. Petit and Mr. Taylor will actually seek to introduce.  The Court will be far better served by ruling on objections, if any, as they come up at trial.  The Court should deny the government's motion.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the government's motions *in limine*, with the exception that it should grant government's second motion *in limine* to the extent it seeks to exclude evidence related to AvKARE, but otherwise deny it.

Dated: October 19, 2020

FRESHFIELDS BRUCKHAUS
DERINGER US LLP

/s/ Eric B. Bruce
Eric B. Bruce
Jennifer B. Loeb
Altin H. Sila
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4577
Eric.Bruce@freshfields.com
Jennifer.Loeb@freshfields.com
Altin.Sila@freshfields.com

KOBRE & KIM LLP

Matthew I. Menchel
Amanda N. Tuminelli
800 Third Avenue
6th Floor
New York, NY 10022
Telephone:  (212) 488-1200
matthew.menchel@kobrekim.com
amanda.tuminelli@kobrekim.com

*Attorneys for Parker H. Petit*

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

/s/ William Weinreb
William Weinreb
Michael Packard
111 Huntington Ave., Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
billweinreb@quinnemanuel.com
michaelpackard@quinnemanuel.com

William Burck
Daniel Koffmann
51 Madison Avenue, 22nd Floor
New York, New York
Tel: (212) 849-7000
Fax: (212) 849-7100
williamburck@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for William Taylor*