UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- against -

PARKER H. PETIT and
WILLIAM TAYLOR

Defendants.

No. 19 Cr. 850 (JSR)

---

# MEMORANDUM OF LAW IN SUPPORT OF
# PARKER H. PETIT'S AND WILLIAM TAYLOR'S MOTION *IN LIMINE*
# TO PRECLUDE MISLEADING SUMMARY WITNESS TESTIMONY

FRESHFIELDS BRUCKHAUS
DERINGER US LLP

Eric B. Bruce
Jennifer B. Loeb
Altin H. Sila
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4577
Eric.Bruce@freshfields.com
Jennifer.Loeb@freshfields.com
Altin.Sila@freshfields.com

KOBRE & KIM LLP

Matthew I. Menchel
Amanda N. Tuminelli
800 Third Avenue
6th Floor
New York, NY 10022
Telephone: (212) 488-1200
matthew.menchel@kobrekim.com
Amanda.tuminelli@kobrekim.com

*Attorneys for Parker H. Petit*

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

William Weinreb
Michael Packard
111 Huntington Ave., Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
billweinreb@quinnemanuel.com
michaelpackard@quinnemanuel.com

William Burck
Daniel Koffmann
51 Madison Avenue, 22nd Floor
New York, New York
Tel: (212) 849-7000
Fax: (212) 849-7100
williamburck@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for William Taylor*

ii

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .............................................................................................................................5

CONCLUSION ........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chisholm v. Sloan-Kettering*,
  No. 09 Civ. 8211(VM), 2011 WL 2015526, at *8 (S.D.N.Y. May 13, 2011) ............................ 9

*Hester v. BIC Corp.*,
  225 F.3d 178, 185 (2d Cir. 2000) ........................................................................................... 7

*Hunt v. CNH Am. LLC*,
  511 F. App'x 43, 47 (2d Cir. 2013) ........................................................................................ 8

*In re Air Crash Disaster at John F. Kennedy Int'l Airport*,
  635 F.2d 67, 73 (2d Cir. 1980) ............................................................................................... 8

*SEC v. Lek Sec. Corp.*,
  No. 17 Civ. 1789 (DLC), 2019 WL 3034888, at *2 (S.D.N.Y. July 11, 2019) ....................... 6

*SLSJ, LLC v. Kleban*,
  277 F. Supp. 3d 258, 283 (D. Conn. 2017) ............................................................................ 8

*Stelman v. United States*,
  No. 14 Civ. 5363 (SN), 2016 WL 5315196, at *13 (S.D.N.Y. Sept. 21, 2016) ...................... 9

*Three Crown Ltd. Partnership v. Salomon Bros., Inc.*,
  906 F. Supp. 876, 880–81, 894 (S.D.N.Y. 1995) ................................................................... 8

*United States v. Citron*,
  783 F.2d 307, 316 (2d Cir. 1986) ........................................................................................... 5

*United States v. Freeman*,
  498 F.3d 893, 905 (9th Cir. 2007) .......................................................................................... 7

*United States v. Freeman*,
  730 F.3d 590, 596 (6th Cir. 2013) .......................................................................................... 7

*United States v. Graham*,
  No. 16 Cr. 786-2 (NSR), 2019 WL 2366724, at *8 (S.D.N.Y. May 31, 2019) ...................... 6

*United States v. Hawkins*,
  934 F.3d 1251, 1261 (11th Cir. 2019) .................................................................................... 6

**Rules and Regulations**

Fed. R. Evid. 701 .................................................................................................................... 6, 7

Fed. R. Evid. 702 ....................................................................................................................... 7

Defendants Parker H. Petit and William Taylor respectfully submit this memorandum of law in support of their motion *in limine* to preclude the government's summary witness, Carina Chambarry, from testifying regarding the effect of the alleged early recognition of revenue on Mr. Petit's and Mr. Taylor's bonuses.

## **PRELIMINARY STATEMENT**

The Court should preclude the government's summary witness from testifying about what Mr. Petit's and Mr. Taylor's annual bonuses would have been had MiMedx reported revenue as the government alleges it should have. The witness has no idea what their bonuses would have been. The MiMedx board of directors had ultimate discretion to determine what, if any, bonus to award to Mr. Petit and Mr. Taylor, regardless of the Management Incentive Plan that lies at the center of the witness's anticipated testimony. Nevertheless, the government has produced colorful graphics that its summary witness appears poised to present to the jury while explaining the supposed impact of MiMedx's reported revenue on Mr. Petit's and Mr. Taylor's bonuses. Those charts, and the related testimony, are speculative, lack foundation, and will mislead the jury. Even on their own terms, the charts are speculative and vague in that they provide broad ranges of potential alternative bonuses. The government cannot identify with any degree of certainty what bonus Mr. Petit or Mr. Taylor would have received under the Management Incentive Plan because at least 10 percent of the bonus was within the discretion of the Compensation Committee. There simply is no way to reverse engineer what Mr. Petit's or Mr. Taylor's bonuses would have been had MiMedx reported lower revenue in 2015. The apparent reason the government seeks to introduce this groundless testimony is to inflame the passions of the jurors by parading before them numerous graphics suggesting that Mr. Petit and Mr. Taylor earned hundreds of thousands of dollars as a result of their alleged crimes. Given the limited probative value of testimony that

1

is speculative and lacking in foundation, the risk of unfair prejudice substantially outweighs any legitimate reason to receive it in evidence. The Court should exclude it.

## BACKGROUND

The 2015 Management Incentive Plan grants broad discretion to the Compensation Committee of the MiMedx board of directors. The Compensation Committee "ha[s] *full authority* to formulate adjustments and make interpretations . . . *as it deems appropriate*." GX 743 § IV, at 2 (emphasis added) (enclosed as Exhibit A). And the board "may change the plan from time to time in any respect," with "[a]ll decisions . . . relative to the plan [being] final and binding." *Id.* § IV, at 2. "Comments or promises to any employee or past practices are not binding on MiMedx." *Id.* § III, at 1. In short, the Management Incentive Plan provided a rubric for determining and awarding bonuses, if any, to certain senior management that the board could choose to alter, vary, or scrap entirely at its sole discretion, and the Plan stated explicitly that employees could not rely on past application. *Id.*

The rubric itself consists of three components: (1) 10 percent is allocated to earnings before interest, taxes, depreciation, amortization, and share-based compensation expense performance ("adjusted EBITDA"); (2) 80 percent is allocated to revenue; and (3) the remaining 10 percent is allocated to the achievement of "Individual Objectives." *Id.* § VII, at 3. For a participant to be eligible for any bonus, adjusted EBITDA must achieve a predetermined minimum threshold. *See id.* § VII, at 3–4. Beyond that threshold, the plan sets six bonus levels based on adjusted EBITDA and another 12 for revenue. *See id.* § VII, at 4–5. The first six levels of the revenue rubric reflect bonuses awarded for performance of up to 100 percent of the target, while levels seven to 12 award an "excess bonus" based on performance exceeding the target. *Id.* § VII, at 5.

With respect to the 10 percent of the bonus allocated to "Individual Objectives," the Management Incentive Plan gives the board "sole discretion" to determine whether Mr. Petit or

2

Mr. Taylor met their objectives. *Id.* § IV, at 2. "The individual objectives are key operational measures and/or major milestone outcomes that are specific the participant's position and directly related to the overall achievement of the MiMedx Business Plan and/or the MiMedx Strategic Plan." *Id.* § VII, at 4. The "individual objectives" were based on "one or more of" 21 different factors. *Id.* §§ IV, VII, at 2, 4. Although the plan sets out certain performance thresholds, the Compensation Committee had the power to "adjust the corporate and individual performance objectives as the Compensation Committee *in its sole discretion may determine is appropriate*" in order "to fairly and equitably determine the bonus amounts." *Id.* § VII, at 5 (emphasis added). In making that decision, the plan provides "by way of example and not of limitation" a list of six additional factors the Compensation Committee "may" consider, including "unanticipated asset write-downs or impairment," "settlements," and "acquisitions." *Id.* § VII, at 5–6.

On October 16, 2020, the government produced a series of apparent summary exhibits as Jencks Act disclosures of Carina Chambarry, whom the government has noticed as a summary witness. Ms. Chambarry is an economist with the Securities and Exchange Commission. The graphics in the disclosures appear to treat the calculation of Mr. Petit's and Mr. Taylor's bonuses as an exercise in basic arithmetic, purporting to calculate the amount by which MiMedx supposedly overstated its revenue, and from that figure, recalculating the revenue portion of Mr. Petit's and Mr. Taylor's bonuses. 3519-014 (Chambarry, Carina) at 1, 10, 17–20 (attached as Exhibit B). The charts ultimately display a range of potential bonuses for both Mr. Petit and Mr. Taylor where one end of the spectrum reflects a bonus with no recognition of individual objectives and the other with full recognition:



*Id.* at 2. Additional charts further illustrate the point:



4



*Id.* at 18–19. Notably, both charts cite to unidentified "MiMedx public filings," an earlier slide in the presentation, and even the Indictment itself.

Beyond the basic arithmetic, the charts do not take into account, nor do any of the graphics acknowledge, the discretionary nature of the bonuses.

**ARGUMENT**

The Court should (1) preclude Ms. Chambarry from testifying about what Mr. Petit's and Mr. Taylor's bonuses would have been in the government's counterfactual world and (2) exclude any related exhibits because such evidence is speculative, lacks foundation, and would cause undue prejudice to Mr. Petit and Mr. Taylor by confusing the jurors and inflaming their passions. Unless summary testimony and charts "fairly represent and summarize the evidence upon which they are based," they are "more likely to confuse or mislead the jury than . . . to assist it." *United States v. Citron*, 783 F.2d 307, 316–17 (2d Cir. 1986) (reversing where government's summary chart

contained "seemingly arbitrary figures" and no witness explained underlying calculations).[1] "Before admitting such testimony, the court must ascertain *with certainty* that the summaries are based upon and fairly represent competent evidence already before the jury." *SEC v. Lek Sec. Corp.*, No. 17 Civ. 1789 (DLC), 2019 WL 3034888, at *2 (S.D.N.Y. July 11, 2019) (emphasis added).  Ms. Chambarry's anticipated testimony and charts do not fairly represent and summarize the evidence upon which they are based because they simply ignore the discretionary components of the Management Incentive Plan.

Ms. Chambarry erroneously assumes that the calculation of bonuses was nothing more than a matter of basic arithmetic, despite repeated references to the Compensation Committee's discretion to adjust the bonus formulas and determine bonus amounts, either within the rubric of the Management Incentive Plan or based on something entirely different.  *See* Ex. A §§ IV, VII, at 2–6.  No one can reverse engineer with any degree of certainty what Mr. Petit or Mr. Taylor would have received because the Compensation Committee and the board of directors at large, acting within its sole and complete discretion, could have scrapped the Management Incentive Plan altogether.  *See id.* § IV, at 2.  Any testimony regarding Mr. Petit's or Mr. Taylor's bonuses under some counterfactual scenario is wholly speculative and inadmissible on that basis alone.  *See* Fed. R. Evid. 701; *United States v. Graham*, No. 16 Cr. 786-2 (NSR), 2019 WL 2366724, at *8 (S.D.N.Y. May 31, 2019) ("Lay witnesses may not speculate in their answers to questions posed . . . ; their opinions may not be based on speculation, intuition, rumors or matters remote from their experience."); *see also United States v. Hawkins*, 934 F.3d 1251, 1261 (11th Cir. 2019) (district

---

[1] Unless otherwise noted, we have omitted internal citations, quotation marks, and alterations from citations in this brief.

6

court plainly erred by admitting summary witness's "speculative interpretive commentary on the meanings of phone calls and text messages").

Nor should the government be permitted to introduce a broad, hypothetical range of bonuses as it apparently intends to do. Any suggestion about how the Compensation Committee might have exercised its discretion in the government's alternative reality is a guessing game. The only witnesses who could testify to that question are the members of the Compensation Committee, none of whom is on the government's witness list. An SEC economist's presentation of an expansive set of potential bonuses based on an incentive compensation plan that, on its face, endows the Compensation Committee with broad discretion to administer a three-component bonus plan—collectively encompassing dozens of tiers and factors for each of its components—does little to aid the jury in evaluating the evidence. *Cf., e.g.*, *United States v. Freeman*, 730 F.3d 590, 596 (6th Cir. 2013) (vacating conviction where district court admitted case-agent testimony interpreting conversations that "was mere speculation or relied on hearsay evidence"); *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007) ("the helpfulness requirement of both Fed. R. Evid. 701 and Fed. R. Evid. 702" barred testimony that "consisted of either speculation or repetition of already clear statements"); *Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000) (holding that "Rule 701(b)['s helpfulness requirement] bars lay opinion testimony that amounts to naked speculation concerning the motivation for a defendant's adverse employment decision").

Because they are entirely speculative and lack foundation, the charts not only have little probative value, but they risk misleading the jurors and inflaming their passions against Mr. Petit and Mr. Taylor. The government no doubt seeks to introduce these charts so that the jury will conclude that Mr. Petit and Mr. Taylor had a motive to commit fraud because they would have lost out on hundreds of thousands of dollars if MiMedx had reported revenue as the government alleges

it should have. But for the reasons stated above, a juror could not permissibly reach that conclusion on the basis of Ms. Chambarry's anticipated testimony or the charts the government has disclosed. At the same time, introducing evidence of six-figure bonus payments and total compensation nearing $1 million is overwhelmingly likely to arouse in jurors feelings of resentment and hostility toward Mr. Petit and Mr. Taylor.

Courts routinely exclude evidence such as this under Rule 403 because it is speculative, lacking in foundation, and inflammatory. For instance, in *Three Crown Ltd. Partnership v. Salomon Bros., Inc.*, 906 F. Supp. 876, 880–81, 894 (S.D.N.Y. 1995), the plaintiff's damages expert speculated that the plaintiff would have executed on a "recently evolved" business plan had the defendants not manipulated the market. Despite the expert's "intricate series of complicated calculations," however, the "a series of assumptions" underlying the analysis ignored the reality of a "rapidly changing market." *Id.* at 894. In addition to being excludable under Rule 702, the Court independently excluded that testimony under Rule 403 because it "could . . . confuse and mislead the jury." *Id.* Similarly here, Ms. Chambarry's calculations—even if arithmetically accurate—rely on a series of assumptions that ignore the reality of a complex and entirely discretionary bonus regime and likewise will confuse and mislead the jury. *Cf. id.*; *cf. also Hunt v. CNH Am. LLC*, 511 F. App'x 43, 47 (2d Cir. 2013) (affirming exclusion of expert's opinions under Rules 403 and 702 where they were "speculative" and "relied on assumptions not based in evidence"); *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 635 F.2d 67, 73 (2d Cir. 1980) (affirming exclusion of chart comparing flight paths under Rule 403 where, among other things, "[t]he thickness of the lines on the chart . . . could have misled the jury"); *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 283 (D. Conn. 2017) (excluding expert's first opinion where it "contains factual issues to be decided by the jury, facts which he has 'assumed,' giving rise to 'the

danger of unfair prejudice, confusion of the issues, or misleading the jury'"); *Stelman v. United States*, No. 14 Civ. 5363 (SN), 2016 WL 5315196, at *13 (S.D.N.Y. Sept. 21, 2016) (expert's testimony "will not be admissible under Federal Rule of Evidence 403 because it is too speculative"); *Chisholm v. Sloan-Kettering*, No. 09 Civ. 8211 (VM), 2011 WL 2015526, at *8 (S.D.N.Y. May 13, 2011) (exhibit presenting calculations of plaintiff's losses "must be excluded to the extent that it contains assertions unsupported by any evidence").

The Court should exclude any testimony from Ms. Chambarry regarding Mr. Petit's and Mr. Taylor's bonuses. At a minimum, the Court should preclude her from suggesting to the jury that Mr. Petit and Mr. Taylor might not have received their "Individual Objectives" bonuses in the absence of any foundation for that suggestion.

## **CONCLUSION**

For the foregoing reasons, the Court should preclude Ms. Chambarry from testifying regarding Mr. Petit's and Mr. Taylor's 2015 bonuses.

Dated: October 20, 2020

<table>
<tr><td>

FRESHFIELDS BRUCKHAUS
DERINGER US LLP

 /s/ Eric B. Bruce
Eric B. Bruce
Jennifer B. Loeb
Altin H. Sila
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4577
Eric.Bruce@freshfields.com
Jennifer.Loeb@freshfields.com
Altin.Sila@freshfields.com


KOBRE & KIM LLP

Matthew I. Menchel
Amanda N. Tuminelli
800 Third Avenue
6th Floor
New York, NY 10022
Telephone:  (212) 488-1200
matthew.menchel@kobrekim.com
amanda.tuminelli@kobrekim.com

*Attorneys for Parker H. Petit*

</td><td>

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

 /s/ William Weinreb
William Weinreb
Michael Packard
111 Huntington Ave., Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
billweinreb@quinnemanuel.com
michaelpackard@quinnemanuel.com

William Burck
Daniel Koffmann
51 Madison Avenue, 22nd Floor
New York, New York
Tel: (212) 849-7000
Fax: (212) 849-7100
williamburck@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for William Taylor*

</td></tr>
</table>