UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against -<br><br>PARKER H. PETIT and<br>WILLIAM TAYLOR<br><br>    Defendants. | No. 19 Cr. 850 (JSR) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF WILLIAM TAYLOR'S
MOTION FOR A JUDGMENT OF ACQUITTAL OR A NEW TRIAL**

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

William D. Weinreb
Michael T. Packard
111 Huntington Ave., Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
billweinreb@quinnemanuel.com
michaelpackard@quinnemanuel.com

William A. Burck
Daniel R. Koffmann
51 Madison Avenue, 22nd Floor
New York, New York
Tel: (212) 849-7000
Fax: (212) 849-7100
williamburck@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for William Taylor*

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ...................................................................................................................................1

I. THE GOVERNMENT IMPROPERLY URGED THE JURY TO CONVICT ON AN ERRONEOUS STANDARD OF MATERIALITY. ......................................................1

II. THE GOVERNMENT'S SHIFT TO A NEW THEORY OF WRONGDOING REQUIRES VACATUR. ...................................................................................................4

III. MR. TAYLOR IS ENTITLED TO A JUDGMENT OF ACQUITTAL. ..........................5

    A. Mr. Taylor's Argument Does Not Require Impermissible Speculation About The Jury's Verdict. ...................................................................................6

    B. No Rational Jury Could Have Convicted Mr. Taylor Based On CPM, SLR, Or Stability. .........................................................................................................7

    C. No Rational Jury Could Have Convicted Mr. Taylor Based On First Medical. ................................................................................................................9

CONCLUSION ..............................................................................................................................10

i

## **TABLE OF AUTHORITIES**

**Page(s)**

*United States v. Acosta*,
  17 F.3d 538, 545–46 (2d Cir. 1994) ................................................................................ 6

*United States v. Banki*,
  685 F.3d 99, 118–20 (2d Cir. 2012) ............................................................................ 4, 5

*United States v. D'Amato*,
  39 F.3d 1249, 1256 (2d Cir. 1994) .............................................................................. 6, 8

*United States v. Litvak*,
  889 F.3d 56, 65–66 (2d Cir. 2018) .............................................................................. 1, 3

*United States v. Mollica*,
  849 F.2d 723, 729 (2d Cir. 1988) ................................................................................... 5

*United States v. Pauling*,
  924 F.3d 649, 656 (2d Cir. 2019) ............................................................................... 5, 9

*United States v. Rivera*,
  22 F.3d 430, 437 (2d Cir. 1994) ..................................................................................... 5

*United States v. Roshko*,
  969 F.2d 1, 4–5 (2d Cir. 1992) ....................................................................................... 5

*United States v. Tocco*,
  135 F.3d 116, 130 (2d Cir. 1998) ................................................................................... 4

*United States v. Truman*,
  688 F.3d 129, 139 (2d Cir. 2012) ................................................................................. 10

Defendant William Taylor respectfully submits this reply memorandum of law in support of his motion for a judgment of acquittal or a new trial.

## ARGUMENT

### I. THE GOVERNMENT IMPROPERLY URGED THE JURY TO CONVICT ON AN ERRONEOUS STANDARD OF MATERIALITY.

The Court should have no confidence that the jury reached its verdict based on a permissible understanding of materiality. The government's argument in summation—"that a misstatement of revenue by even a dollar would be of significance"—mischaracterizes the materiality standard and effectively removes the element of materiality entirely. Dkt. No. 126 ("Mot.") at 17–19; Tr. 2251–52. The government makes no real attempt to defend this standard. Nor could it. No reasonable investor could believe that *any* misstatement of revenue, by a single dollar, would be material in deciding whether to invest in a company with annual revenue of $187.3 million. Jeffrey Russell's explanation for why a misstatement of even one dollar would be of significance to him personally is insufficient to establish materiality, because that plainly would not be "within the parameters of the thinking of reasonable investors" in publicly traded equity. *See United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018) ("[T]here must be evidence of a nexus between a particular trader's viewpoint and that of the mainstream thinking of investors in that market.").[1] And even if a reasonable investor would find such a small misstatement of revenue important in making an investment decision, endorsing such a theory would effectively eliminate the materiality requirement entirely.

The government does not contest that it would be erroneous, misleading, and improper to argue that "a misstatement of revenue by even a dollar" would be material and instead pretends

---

[1] Unless otherwise noted, all internal quotations, citations, and alterations have been removed from citations in this brief.

1

that it did not make precisely that argument in its summation. The government asserts that it wasn't *really* arguing this obviously incorrect standard of materiality, it was just making a "passing reference" that was "merely intended to highlight a memorable portion of [Mr. Russell's] testimony." Opp. 34–35. Nonsense. This is what the government argued:

> It's not seriously in dispute the investors cared that MiMedx met their revenue guidance, and they were very sensitive to issues like whether the company met its predictions about its quarterly revenue and whether it performed in line with the analyst expectations.
>
> You heard this from Joe Docter, that investor from Minnesota. He told you whether MiMedx reported revenue in line with what Wall Street expected in its own guidance was a crucial fact that he considered in determining whether to buy, sell or hold stock on behalf of his clients.
>
> Jeff Russell, who testified just yesterday, told you a misstatement of revenue by even a dollar would be of significance to him because it would raise concerns about integrity.

Tr. 2251–52. The record belies the government's attempt to recast its materiality argument as just a "passing reference." The government's revisionist history is a concession that the argument was improper.

Nor does the government have any justification or excuse. It suggests, for example, the argument did not prejudice Mr. Taylor because "[n]othing in the evidence or the parties' arguments suggested that a misstatement of [one dollar] was at issue in this case." Opp. 35. That is a non sequitur. The jury had to determine whether the small fraction of MiMedx revenue that the government alleged was overstated "would have been significant to a reasonable investor in making a decision whether or not to purchase MiMedx stock." Dkt. No. 127 at 17 (Instruction No. 12). The government argued that *any* amount, "even a dollar," met that threshold. It thus argued that the jury could tick off the materiality element so long as it found that revenue was overstated by at least 0.000001% and need not assess whether the amounts actually at issue were

material. That is improper. *Cf. Litvak*, 889 F.3d at 66 ("[S]ome misstatements may be so 'obviously unimportant' as to be immaterial as a matter of law.").

The government also seeks refuge in the jury instructions, but the instructions do not solve the problem. The instructions merely define the term: "'material,' that is to say, the figure would have been significant to a reasonable investor in making a decision whether or not to purchase MiMedx stock." Dkt. No. 127 at 17 (Instruction No. 12); *see also id.* at 25 (Instruction No. 18: "material, meaning it would have been important to a reasonable investor in relying upon the statement in making an investment decision."). The jury instructions were silent on the key issue of whether a particular amount of revenue would, or would not, be sufficient to affect a reasonable investor's decision about investing in MiMedx stock. The jury instruction's accurate statement of the definition of materiality has no impact on the prejudice caused by the government's argument that *any* misstatement that affects revenue *at all* is material.

Nor did Mr. Taylor somehow concede the materiality element, as the government suggests in its opposition. Opp. 35. Mr. Taylor contested every element of the charges against him, including materiality, and his counsel cross-examined the government's witnesses on that issue at length. *See* Tr. Tr. 1462–1466; 1984–1989. That he did not highlight that issue at length in summation does not indicate that materiality was not in play, as reflected by the fact that the government felt it necessary to resort to an erroneous, misleading, and prejudicial materiality argument in its summation.

Finally, Mr. Taylor's failure to object during the government's summation is immaterial. The government cannot maintain that it would not result in substantial prejudice to eliminate the materiality element as its summation suggested. The Court can have no confidence that the jury reached its verdict based on a permissible understanding of materiality, or even that the jury

3

considered the materiality element at all.  Mr. Taylor is entitled to a new trial.

## II.   THE GOVERNMENT'S SHIFT TO A NEW THEORY OF WRONGDOING REQUIRES VACATUR.

As demonstrated in Mr. Taylor's opening brief, the government's last-ditch shift to a new theory of wrongdoing—involving a distributor not named in the Indictment—amounts to a constructive amendment of the Indictment or a prejudicial variance.  Either way, Mr. Taylor is entitled to a new trial.

The government is wrong on the facts.  The evidence conclusively showed that Mr. Taylor's text message exchange with Mike Carlson concerned Athletic Surgical—*not* First Medical.  Mot. 3–6, 11–13; *see also infra* 9–10.  The government makes no serious attempt to dispute this, instead relying on purportedly higher standards of review in an attempt to minimize this improper—and unconstitutional—shift in argument.  The government provides no authority that a constructive amendment or prejudicial variance is permissible in response to a defendant's argument.  Opp. 34.  The two decisions to which it cites are inapposite.  *United States v. Tocco*, 135 F.3d 116 (2d Cir. 1998), did not involve a constructive amendment to or prejudicial variance from the indictment, but rather a freestanding claim of prosecutorial misconduct.  *Id.* at 130.  Nor does *United States v. Banki*, 685 F.3d 99 (2d Cir. 2012), suggest that the government can change its theory midstream, or that a different standard of review should apply, simply because the government was responding to an argument in a defendant's summation.  *Id.* at 119–20 (analyzing claims of prosecutorial misconduct in summation *separately* from claims of constructive amendment and variance); *see also id*. at 118 ("a constructive amendment is a per se violation of the Grand Jury Clause").  Additionally, the "flagrant abuse" standard the government points to, which may be appropriate for challenges to prosecutorial misconduct grounded in due-process concerns, is inapplicable to situations involving constructive

4

amendment. *See id*. at 118; *cf. United States v. Rivera*, 22 F.3d 430, 437 (2d Cir. 1994) (analyzing when a prosecutor's "improper statements" during summation result in a denial of due-process rights).

The government explicitly invited the jury to find Mr. Taylor guilty even if the text messages concerned Athletic Surgical. Tr. 2459 ("If Bill Taylor is directing Athletic Surgical to give an audit confirm that omits the terms of the deal, *well then obviously he is guilty of the crimes charged in the indictment.* He's still lying to the auditors.") (emphasis added). The government's statement that "simply pointing out that, on the defendant's own account, he would also have been committing a crime," is a distinction without a difference. Opp. 33. The Indictment does not mention Athletic Surgical and the grand jury did not indict Mr. Taylor based on conduct relating to Athletic Surgical. *See generally* Indictment ¶¶ 20–59. The critical messages in GX 1509 refer to Athletic Surgical and cannot support a conviction for any conduct charged in the Indictment. Introducing a new theory of guilt, based on conduct that was either never presented to the grand jury—or worse, was *rejected* by the grand jury—is a clear-cut example of a constructive amendment or prejudicial variance. The government's conduct was improper and requires setting aside the verdict under any standard of review, especially given the heightened risk of constructive amendment in fraud cases. *See United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988); *see also United States v. Roshko*, 969 F.2d 1, 4–5 (2d Cir. 1992).

### III.  MR. TAYLOR IS ENTITLED TO A JUDGMENT OF ACQUITTAL.

No rational jury could have convicted Mr. Taylor based on the evidence presented at trial. While the government may be entitled to the benefit of all reasonable inferences from the evidence, this Court should give "no deference to impermissible speculation." *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019). The government "must do more than introduce evidence at least as consistent with innocence as with guilt." *United States v. D'Amato*, 39 F.3d

5

1249, 1256 (2d Cir. 1994). It failed to do so, and Mr. Taylor is entitled to a judgment of acquittal.

> A. **Mr. Taylor's Argument Does Not Require Impermissible Speculation About The Jury's Verdict.**

The government misconstrues Mr. Taylor's argument and thus attacks a straw man. Contrary to the government's assertion, Mr. Taylor does not invite the Court "to attempt to determine the reason or reasons for verdicts that are inconsistent," Opp. 29, for the simple reason that the jury's verdicts as to conspiracy were *not* inconsistent. The evidence was insufficient to conclude that Mr. Taylor conspired with Mr. Petit or that Mr. Petit conspired with anyone else. The jury's verdict reflects that. And it demonstrates that the jury only could have concluded (albeit erroneously) that Mr. Taylor conspired with someone else. And while impossible to know for sure the identity of Mr. Taylor's supposed coconspirator, the jury may well have concluded it was Mike Carlton. This finds significant support not only in Jury Note 7, to which the government has no response at all, but also, as addressed further below, the lack of persuasive evidence of any other conspiracy.

*United States v. Acosta*, 17 F.3d 538 (2d Cir. 1994), stands as an admonishment against trying to harmonize inconsistent verdicts. *Id.* at 546 ("[I]t is not within the province of the court to attempt to determine the reason or reasons for verdicts that are inconsistent."). But Mr. Taylor has not argued he is entitled to a judgment of acquittal because of inconsistencies in the verdicts. Moreover, far from engaging in speculation based only on "boxes on the verdict form," *id.* at 545, Mr. Taylor's arguments are grounded in the evidence and the way that it was likely received by the jury. *Cf.* Dkt. No. 137 (Jury Note 7). No rational jury could have concluded based on the evidence at trial that Mr. Petit and Mr. Taylor conspired to commit the underlying crimes, nor that Mr. Taylor conspired with anyone else to deceive MiMedx's auditors.

### B. No Rational Jury Could Have Convicted Mr. Taylor Based On CPM, SLR, Or Stability.

First, the evidence is insufficient to show that Mr. Taylor engaged in any wrongdoing regarding the agreement with CPM. The government points to Jeff Schultz's testimony, Opp. 23, but even taken at face value, that evidence proves the opposite of what the government contends. Mr. Schultz testified that after *he* raised a proposal to disguise the $200,000 payment to Mark Brooks, Mr. Taylor not only never acted on it, he told Mr. Schultz not to make a suggestion like that again in the future. *See* Tr. 1018 (Mr. Taylor "said, 'Drop it and don't ever bring it up again.'"). Mr. Taylor's failure to dismiss Mr. Schultz's suggestion out of hand does not remotely establish that he "considered" it, much less that he engaged in a criminal conspiracy. Opp. 4.

The government also suggests in conclusory fashion that the evidence showed Mr. Taylor was involved in the consulting agreement with Mark Brooks, citing to the testimony of Mike Carlton. Opp. 4. This is not a serious argument. Mr. Carlton's own testimony made clear that Mr. Taylor only learned about the agreement with Mark Brooks after it was made. Tr. 942–44; *see also* DX 140; DX 146 ("I thought we needed him to forgo the stock from June 11 of this year for the $200k?"). The only inference that a rational juror could draw from this is that Mr. Taylor was out of the loop by the time MiMedx agreed to the $200,000 payment to Mark Brooks.

The government also posits that the jury found Mr. Taylor conspired with Brent Miller, but that argument fails too. The government relies solely on GX 1033, an email that Brent Miller sent to David Nix and Mark Diaz—but not Bill Taylor. Opp. 24. Mr. Miller references "inventory rebuild and revenue recognition issues" and then states "Bill wants to ship the CPM replacement product in August over a 2-3 week period in 4 shipments. We have auditors in here the end of July looking at the books." GX 1033. The government does not point to any

testimony from Mr. Miller, Mr. Nix, or Mr. Diaz that provides context for the email or helps to decipher its meaning, because it did not call any of them as witnesses—no doubt because the part of the email the government likes is Mr. Miller's closing with "No more emails on this. Let's meet." *Id.* Instead of providing the jury with the testimony necessary to understand the email, the government simply put its sinister gloss on it and argued it was "as close as you're going to come to a smoking gun in this case." Tr. 2263. But the government's rhetoric cannot substitute for proof, and the inference the government wants to draw—that "Mr. Taylor want[ed] to wait until August to ship that replacement product" in order to conceal the information from MiMedx's auditors, *id.*—is directly contrary to the testimony of its own witness, Matthew Urbizo. Mr. Urbizo, the witness from Cherry Bekaert, testified that the auditors received all data relating to returns and exchanges *regardless* of whether (or when) they were onsite at MiMedx. *Id.* at 1911. So it would make no sense to conclude that GX 1033 shows anything about Mr. Taylor conspiring to mislead auditors. At a minimum, the evidence is "at least as consistent with innocence as with guilt." *D'Amato*, 39 F.3d at 1256.

The evidence concerning SLR is almost nonexistent. The most the government can do is argue that Mr. Taylor signed the agreement with SLR and was aware SLR would have difficulty paying for MiMedx's sale on time. Opp. 30. This is also all the government could muster during its summation at trial. Tr. 2271. At no point did the government show that Mr. Taylor had any role in accounting for the transaction or that he was aware of how it was accounted for. *Id.* at 1145–46. The government failed to provide any evidence that would permit a reasonable inference that Mr. Taylor deceived auditors or made misstatements to shareholders as to SLR.

Stability is even more farfetched. There was no evidence that Mr. Taylor played any role whatsoever in MiMedx's sales to Stability in 2015. The mere act of signing a distributor

agreement that *Mr. Martin* believed to be a sham shows nothing about Mr. Taylor's state of mind or participation in a conspiracy. Not a single witness (including Mr. Martin) nor exhibit introduced at trial suggested that *Bill Taylor* understood there was anything unusual or improper about signing the distributor agreement. The government's leap in logic relies on impermissible speculation that cannot support the jury's verdict. *See Pauling*, 924 F.3d at 656.

### C. No Rational Jury Could Have Convicted Mr. Taylor Based On First Medical.

The evidence relating to First Medical likewise does not suffice to support Mr. Taylor's conviction. Mr. Taylor's motion demonstrated that the only conceivable (albeit erroneous) basis for his conviction consistent with the evidence was if the jury found he conspired with Mike Carlton to mislead MiMedx's auditors. Mot. 9–11. The government's principal response is that the evidence was sufficient to conclude that Mr. Taylor and Mr. Carlton conspired to commit securities fraud because the December 2015 sale to First Medical itself was fraudulent. Opp. 30. This argument directly contradicts the government's own—and only—witness who testified about that transaction, Mr. Carlton, who said "The order itself was fine. . . . The order itself was fine," Tr. 687, "Again, the order itself and the public tender bidding was something that we had done before. . . . The order was fine . . . [A]gain, the order itself was something we had done before, bidding on a public tender, nothing wrong with that," *id.* at 688, and "The order itself and the bid process itself was not, in my opinion, wrong," *id*. at 689.

Beyond this, the government returns to its mischaracterization of Mr. Taylor's text messages with Mr. Carlton about the audit confirmation letter, arguing that the jury was entitled to adopt its interpretation of the text message exchange—notwithstanding that Mr. Taylor has repeatedly demonstrated that it is inaccurate. Opp. 31. And while the government is correct that Mr. Taylor "essentially asks the Court to disregard [Mr. Carlton's] testimony" that "This is separate. Just the confirm for the auditors," and "No extra commentary. Just sign and send,"

9

referred to First Medical, it is plainly incorrect that "[t]his is improper." Opp. 31. On the contrary, the Court *must* disregard testimony, such as this, that is "incredible on its face." *United States v. Truman*, 688 F.3d 129, 139 (2d Cir. 2012).

## CONCLUSION

For the foregoing reasons, the Court should issue a judgment of acquittal or, in the alternative, vacate Mr. Taylor's conviction on Count One of the Indictment and set a date for a retrial on that count.

Dated: January 29, 2021  
Boston, Massachusetts

QUINN EMANUEL URQUHART & SULLIVAN, LLP

 /s/ William D. Weinreb  
William D. Weinreb  
Michael T Packard  
111 Huntington Ave., Suite 520  
Boston, MA 02199  
Tel: (617) 712-7100  
Fax: (617) 712-7200  
billweinreb@quinnemanuel.com  
michaelpackard@quinnemanuel.com

William A. Burck  
Daniel R. Koffmann  
51 Madison Avenue, 22nd Floor  
New York, New York  
Tel: (212) 849-7000  
Fax: (212) 849-7100  
williamburck@quinnemanuel.com  
danielkoffmann@quinnemanuel.com

*Attorneys for William Taylor*