# EXHIBIT 7

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                              19 CR. 741 (WHP)
                                                Remote Videoconference
 5
     BRYAN COHEN,
 6
                     Defendant.
 7
     ------------------------------x
 8
                                                New York, N.Y.
 9                                              June 9, 2020
                                                11:00 a.m.
10
     Before:
11
                     HON. WILLIAM H. PAULEY III,
12
                                                District Judge
13
                              APPEARANCES
14
     GEOFFREY S. BERMAN,
15        United States Attorney for the
          Southern District of New York
16   RICHARD A. COOPER
          Assistant United States Attorney
17
     BRAFMAN & ASSOCIATES, P.C.
18        Attorneys for Defendant
     BY:  BENJAMIN BRAFMAN
19
```

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | (The Court and all parties appearing via Skype)                      |
| 2  | THE DEPUTY CLERK:  Judge, you can hear me?                           |
| 3  | THE COURT:  I can.                                                    |
| 4  | THE DEPUTY CLERK:  I think we're ready to proceed.                   |
| 5  | THE COURT:  I don't see the defendant on my scene.                   |
| 6  | MR. BRAFMAN:  We are on the screen but we're in a very               |
| 7  | small box in the lower right-hand corner of our computer.  This      |
| 8  | is Mr. Brafman.                                                      |
| 9  | THE COURT:  So your and your client are together?                    |
| 10 | MR. BRAFMAN:  Yes, your Honor.                                       |
| 11 | THE COURT:  OK.  All right then I think we are ready                 |
| 12 | to proceed.  Would counsel for the government give their             |
| 13 | appearance.                                                          |
| 14 | MR. COOPER:  Yes.  Good morning, your Honor.  Richard                |
| 15 | Cooper for the United States.                                        |
| 16 | THE COURT:  Good morning, Mr. Cooper.  And are any of                |
| 17 | your colleagues joining?                                             |
| 18 | MR. COOPER:  No one -- none of my colleagues are on                  |
| 19 | the video Skype.  A number, I believe, are dialed in on the          |
| 20 | public telephone line.                                               |
| 21 | THE COURT:  Very well.                                               |
| 22 | Would counsel for the defendant give his appearance?                 |
| 23 | MR. BRAFMAN:  Your Honor, it's Benjamin Brafman of                   |
| 24 | Brafman & Associates.  I am seated next to Bryan Cohen, the          |
| 25 | defendant.  I have some colleagues in attendance.  Pursuant to       |

1           Thus, the defendant's total offense level is 19.
2  Because this is his first criminal conviction, his criminal
3  history category is a I.
4           Under the guidelines, that yields a guideline range of
5  30 to 37 months of imprisonment.
6           Now, the parties have sharply divergent views about
7  the appropriate sentence for Mr. Cohen.  The government argues
8  for a sentence at the top of the guidelines range.  The
9  defendant urges the Court to sentence him to two thousand hours
10 of community service to be performed in France, his country of
11 citizenship.
12          This Court rejects both parties' proposals.  The
13 Court's obligation is to fashion a sentence that considers all
14 the factors under 3553(a) and makes an individualized
15 assessment of this case and the defendant.
16          And so turning to those factors, with respect to the
17 nature and circumstances of the offense, Mr. Cohen engaged in a
18 protracted course of conduct and disclosed material nonpublic
19 information on multiple occasions about substantial
20 acquisitions in which his employer Goldman Sachs was serving as
21 an adviser.  He provided a steady stream of secret information
22 for which he was paid in cash by Marc Demane, a member of a
23 much wider insider trading network.
24          The sophistication of the scheme included the use of
25 prepaid, unregistered burner phones and speaking in code.

1     The government aptly describes Mr. Cohen's conduct as
2  brazen.  His actions in this insider trading conspiracy were
3  the actions of someone who knew what he was doing was wrong and
4  took every precaution to try to avoid detection.  There is, in
5  my view, a compelling need for deterrence to punish Mr. Cohen
6  and to discourage others like him from engaging in insider
7  trading.
8     Now, Mr. Cohen was born in the South of France and
9  raised by caring and devoted parents.  He consistently ranked
10 at the top of his class beginning in elementary school and
11 continuing all the way through to completion of a master's
12 degree in corporate finance.
13    He was also a gifted athlete and offered a scholarship
14 as a member of France's national golf team.
15    Because of his academic accomplishments, he was
16 selected for highly coveted internships in France, including --
17 in finance, excuse me, including one in the United States.  And
18 when he graduated from his university studies, Goldman Sachs
19 hired him as an analyst in its London office.  There he
20 excelled and earned the respect of his supervisors and
21 subordinates.  Six years later he was promoted to
22 vice-president and in August of 2017 he realized his dream when
23 he was transferred to Goldman Sachs' headquarters in New York.
24    In short, Mr. Cohen led a privileged life and in many
25 ways until he got involved in this conspiracy an exemplary life

and seemed destined for great success in the world of investment banking.

Now, the Court has reviewed the many testimonials submitted by family, friends, coworkers, and others on Mr. Cohen's behalf. They paint a picture of a humble individual who was known for engaging in acts of kindness to others. Those letters, brimming with anecdotal stories of good works, stand in stark contrast to the criminal conduct to which Mr. Cohen has pled guilty.

There appears to be no explanation for Mr. Cohen's agreement to participate in this sordid scheme other than greed and hubris. The secret cash payments for confidential information were corrupt in every way and Mr. Cohen certainly knew it from the start. It was not a momentary lapse of judgment but continued over many months.

As the government notes, it's people like the defendant with access to inside information that make the entire criminal enterprise possible.

Moreover, he didn't really need the money because his employer was paying him handsomely. The proceeds that he received over the course of this scheme were less than his annual bonus. Perhaps he thought he covered his tracks so well that no one would ever discover the scheme or perhaps he was just doing it for the thrill. I certainly -- I don't know. But, while the record suggests that Mr. Cohen will not

1    recidivate, the gravity of the crime underscores the need for
2    deterrence.  Indeed, he claims to have withdrawn from the
3    conspiracy nearly two years before he was arrested.  There's
4    little evidence of any contact about 18 months prior to the
5    arrest.  But, in the end, who knows, as Mr. Cooper has
6    suggested.
7                To be sure, Mr. Cohen has already suffered significant
8    consequences.  He'll carry a felony conviction for the rest of
9    his life.  He's forfeited $260,000, the profits he received
10   from his insider trading conspiracy.  He was terminated by
11   Goldman Sachs after nearly ten years of employment.  The SEC
12   has barred him forever from the financial services industry.
13   He'll be deported from the United States and may not return,
14   dashing his hopes of raising a family here.  And further, this
15   prosecution has been widely publicized and his reputation is in
16   ruins.
17               General deterrence is also important.  As many judges
18   in this district have noted, insider trading is an easy crime
19   to commit but a difficult crime to catch.  This conviction was
20   the result of a lengthy and painstaking investigation into an
21   international insider trading network.  Insider trading is a
22   serious offense that undermines the financial markets, erodes
23   investor confidence, and ultimately weakens the United States.
24   Those who contemplate engaging in such conduct should
25   understand the consequences.

1     Now, Mr. Cohen's life was put on pause when he was
2  arrested back on October 22 and confined to his apartment since
3  that time.  In this Court's view, that pause needs to continue
4  for a significant period.  In dealing with defendants who are
5  foreign nationals like Mr. Cohen other judges have given
6  consideration to the consequences attached to that status by
7  the Bureau of Prisons.  Foreign nationals, unlike similarly
8  situated U.S. citizens, are unable to serve terms of
9  imprisonment in a camp or minimum security facility.  And when
10 foreign nationals complete a term of imprisonment they are
11 transferred to ICE detention where they can wait for an
12 indefinite period to be returned to their home country.  But
13 the defendant's suggestion that he perform community service in
14 France for a crime he committed in the United States is in my
15 view unenforceable and absurd.
16    Now, as has been discussed both in the papers and
17 here, the COVID-19 pandemic presents a host of unique
18 challenges.  Mr. Cohen has certain medical conditions that puts
19 him at a higher risk and more susceptible to getting COVID-19.
20 The government's notion that Mr. Cohen should continue in home
21 detention indefinitely to await a time when it's safe for him
22 to surrender to the Bureau of Prisons is in my view unfair and
23 undermines the need for certainty of punishment.  It's
24 impossible to predict when the COVID-19 pandemic will abate and
25 when the Bureau of Prisons could safely designate Mr. Cohen to

1     a facility.  In these special circumstances this Court believes
2     that a lengthy but fixed additional period of home detention,
3     coupled with a rigorous requirement of community service here
4     in the United States is a just punishment that satisfies the
5     interests of justice and serves to deter others from engaging
6     in insider trading.  It also avoids the potential of an
7     unwarranted disparity in sentencing.
8              And so it's against this backdrop and having given
9     full consideration to the parties' submissions --
10             THE DEPUTY CLERK:  Hey, Judge.  I'm sorry.  The
11    dial-in disconnected so let me get that reconnected.
12             THE COURT:  OK.
13             (Pause)
14             THE DEPUTY CLERK:  All right, Judge.  I believe we
15    have connected.
16             Let me just confirm.
17             THE COURT:  Let me know when you're ready, Max.
18             THE DEPUTY CLERK:  Yep.  All right.  I think.  Let's
19    see.
20             OK.  I believe we're back on.  Yep.
21             THE COURT:  Very well.  I will just repeat one remark
22    that I made for everyone's benefit.
23             In these special circumstances this Court believes
24    that a lengthy but fixed additional period of home detention,
25    coupled with a rigorous requirement of community service here

1   in the United States is a just punishment that satisfies the
2   interests of justice and serves to deter others from engaging
3   in insider trading.  It also avoids the potential of
4   unwarranted disparities in sentencing.
5           And so having given full consideration to the parties'
6   submissions, this Court is prepared to impose sentence.
7           Mr. Cohen, you've permanently forfeited your ability
8   to pursue a career in investment banking and a life in the
9   United States.  You stole material nonpublic information,
10  breached your fiduciary duty to Goldman Sachs and its clients,
11  and impaired the functioning of the financial markets.
12          It's my judgment that you be sentenced to time served,
13  to be followed by 12 months of supervised release, subject to
14  all the standard conditions of release which will be reviewed
15  with you by your probation officer as well as the following
16  special conditions which are critical to this sentence.
17          First, your entire term of supervised release, that is
18  all twelve months, will be served in home detention with
19  electronic monitoring technology to be selected by the
20  probation department.  You shall pay the costs of location
21  monitoring based on your ability to pay as determined by the
22  probation department.
23          Second, you will complete 1500 hours of community
24  service working in a program that helps the neediest and most
25  vulnerable segment of our population.  I believe you'll benefit